## GLENNY *v.* LANGDON.

1. It is only through the instrumentality of his assignees that creditors can recover, and subject to the payment of their claims, the property which the bankrupt fraudulently transferred prior to the adjudication in bankruptcy, or which he conceals from, and fails to surrender to, his assignees.
2. Assignees of the bankrupt are subject to the control and direction of the proper court, and it may, for good cause shown, compel them to take the requisite steps for the full and complete protection of the rights of his creditors.

APPEAL from the Circuit Court of the United States for the Southern District of Ohio.

The facts are stated in the opinion of the court.

The case was argued by *Mr. S. T. Crawford* for the appellant, and by *Mr. Stanley Matthews* for the appellee.

MR. JUSTICE CLIFFORD delivered the opinion of the court.

District courts of the United States are constituted courts of bankruptcy, and as such they have original jurisdiction in all matters and proceedings in bankruptcy, with power to hear and adjudicate the same according to the provisions of the Bankrupt Act.

Jurisdiction of those courts in that regard extends as well to the collection of all the assets of the bankrupt as to all cases and controversies between the bankrupt and any of his creditors, and to all acts, matters, and things to be done under and in virtue of the bankruptcy, until the final distribution and settlement of the estate of the bankrupt and the close of the bankruptcy proceedings. 14 Stat. 518; Rev. Stat., sect. 4972.

Creditors appoint the assignee; and the provision is, that, as soon as he is appointed and qualified, the judge, or when there is no opposing interest, the register, shall, by an instrument under his hand, assign and convey to the assignee all the estate, real and personal, of the bankrupt, with all his deeds, books, and papers relating thereto, and that such assignment shall relate back to the commencement of the proceedings in bankruptcy, the express enactment being that by operation of law

the title to all such property and estate, both real and personal, shall vest in such assignee. Id., sect. 5044.

Explicit, comprehensive, and unqualified as the words of that provision are, still the instrument of assignment is made even more extensively operative by what follows in the same section of the original enactment, which provides that all property conveyed by the bankrupt in fraud of his creditors, . . . and all his rights of action for property or estate, real or personal, and all other causes of action arising from contract or from the taking or detention or injury to the property of the bankrupt, . . . shall, in virtue of the adjudication of bankruptcy and the appointment of his assignee, be at once vested in such assignee. 14 Stat. 523; Rev. Stat., sect. 5046.

Sufficient appears to show that certain debtors of the complainant and other creditors failed in business, and made, under the State law, a general assignment of their property to an assignee for the benefit of their creditors, prior to their being adjudged bankrupts. Pursuant to that assignment the assignee accepted the trust, and converted all of the visible property of the insolvents surrendered to him into money, and made final distribution of the proceeds among the creditors.

Charges of fraud against the debtors are made by the complainant, to the effect that they concealed large amounts of other property from their creditors and from the assignee, as fully set forth in the bill of complainant.

On the 10th of August, 1867, one of the said debtors filed his petition in bankruptcy, and on the 11th of October following, the firm of which the first-named debtor was a partner also filed their petition in bankruptcy; and the firm and each partner were duly adjudged bankrupts, the respondent, J. W. Caldwell, being subsequently appointed assignee in each case. They, the bankrupts, surrendered no property, and made oath that they had none, not excepted from the operation of the Bankrupt Act. Discovery has since been made, as the complainant alleges, that the bankrupts had fraudulently concealed a large amount of property not surrendered to the State assignee, or the assignee in bankruptcy, and that one of the firm made large gains and profits subsequent to the assignment

under the State law and prior to the time when the firm was adjudged bankrupt.

Secret and fraudulent devices, as the complainant alleges, were employed by the insolvent debtors to conceal their property from the knowledge of their creditors and the assignee; and he describes the means which led to the discovery of the property, and avers that the respondent assignee was advised of the facts set forth, and that he was requested to adopt means to recover the same, or to allow his name to be used for that purpose, but that he refused so to do.

Both the complainant and respondents are citizens of the same State; but the complainant, being a creditor of the bankrupts, instituted the suit in his own name, claiming the right to do so because the assignee refused to proceed to recover the property, or to allow his name to be used for that purpose. Service was made; and the respondents appeared, and demurred to the bill of complaint, showing, among other things, the following causes: 1. That the complainant has no capacity or right in equity to bring the suit. 2. That the complainant has never proved his claim against the estate of the bankrupts.

Beyond all doubt, the suit in this case is brought to recover property conveyed by the bankrupts in fraud of their creditors, which, by the express words of the Bankrupt Act, vested in the assignee by virtue of the instrument of assignment executed at the time the assignee was appointed.

Jurisdiction of the Circuit Court in the case cannot be sustained upon the ground of the citizenship of the parties, as the record shows that the complainant and respondents are citizens of the same State; nor can it be upheld under the provision of the Bankrupt Act, which provides that the circuit courts shall have concurrent jurisdiction with the district courts of all suits at law or in equity, brought by an assignee in bankruptcy against any person claiming any adverse interest, or by such person against an assignee, touching any property or rights of the bankrupt, transferable to or vested in such assignee, for the plain reason that controversies, in order that they may be cognizable under that provision, either in the circuit or district court, must have respect to some property or rights of property

of the bankrupt, transferable to or vested in such assignee; and the suit, whether it be a suit at law or in equity, must be in the name of one of the parties described in the provision, and be against the other, as appears by the express words of the provision. *Smith* v. *Mason*, 14 Wall. 431; *Morgan* v. *Thornhill*, 11 id. 75.

Nor is there any thing in the case of *Clark* v. *Clark et al.* (17 How. 315) inconsistent with the preceding proposition, when that case is properly understood. By the pleadings and proofs, it appears that the debtor had a large claim against Mexico pending before commissioners prior to the time he filed his petition in bankruptcy; that he was adjudged bankrupt before his claim was allowed; that the description of the claim in his schedule of assets was not such as to render it available to his creditors; that the assignee, having been empowered to sell his assets, sold the same to the sister of the bankrupt for a nominal sum, and that she immediately reconveyed the same to her brother; that he, the brother, subsequently prosecuted the claim, and recovered the same to the amount of $69,429.04, which was paid into the national treasury; that his brother, a judgment creditor, for himself and others, filed a bill of complaint here in the Circuit Court against the bankrupt, claiming the fund, the assignee having died before the same was recovered. Immediate steps were taken to procure the appointment of a new assignee, which appointment was made by the proper district court without delay; and the case shows that he forthwith petitioned the Circuit Court here to be admitted a party complainant in the same bill of complaint, and that he claimed the fund. Hearing was had; and the Circuit Court admitted the new assignee as a party complainant, and enjoined the secretary of the treasury not to pay out the fund until the further order of the court, and finally decreed that the fund belonged to the newly appointed assignee. Appeal was taken by the bankrupt, and this court affirmed the decree of the Circuit Court.

Nothing was decided in that case except that the newly appointed assignee was a proper party complainant in the bill filed by the bankrupt subsequent to the decease of the original assignee, and before his place was filled by a new appointment,

and that the fund belonged to the successor as the representative of the bankrupt estate. Further litigations followed, which show to a demonstration that neither the bankrupt nor any creditor could maintain any such suit. *Clark* v. *Hackett*, 1 Cliff. 273; s. c. 1 Black, 77.

Suppose it to be true, as alleged, that the described property and rights of the bankrupts which form the subject-matter of the present controversy were transferred to and vested in the assignee, it by no means follows that the Circuit Court has jurisdiction of the case, or that the complainant can maintain the suit; as it is clear to a demonstration that the instrument of conveyance referred to did not vest the property or any right to recover the same in the complainant or his associate creditors; nor is the claim which he makes to the property in any legal sense adverse to the rights of the assignee. What the complainant claims as against the assignee is that he, the assignee, refused to institute the suit, or to allow his name to be used for the purpose. He claims no interest in the property of the bankrupt adverse to the assignee; and if he did, the claim could not be sustained for a moment, as the entire property is transferred to the assignee, to be converted into money for distribution.

Unless the assignee can collect what is due to the bankrupt, he can never perform the duty assigned to him as the representative of the bankrupt; and the first section of the Bankrupt Act expressly provides that the jurisdiction of the district courts shall extend to the collection of all the assets of the bankrupt, and to all acts, matters, and things to be done under and in virtue of the bankruptcy.

"Debts due" to the bankrupt, as well as all his rights of action, vest in the assignee by virtue of the adjudication in bankruptcy, and the appointment of the assignee as the representative of the bankrupt. *Shearman* v. *Bingham*, 7 Nat. Bank Reg. 493.

Power and authority are also vested in the assignee by virtue of the bankruptcy, and his appointment to manage, dispose of, sue for, and recover all his property or estate, real or personal, debts or effects, and to defend all suits at law or in equity pending against the bankrupt. 14 Stat. 525.

Congress, in framing the Bankrupt Act, it is believed, intended to provide instrumentalities for its complete execution, and such as are sufficient to carry it into full effect. State courts may, doubtless, exercise concurrent jurisdiction with the district courts in certain cases for the collection of assets not inconsistent with the Bankrupt Act ; but Congress, in the judgment of the court, intended to provide the means for the execution of the law in all cases, even though the State courts should refuse to exercise jurisdiction in such cases. *Lathrop, Assignee,* v. *Drake et al.,* 91 U. S. 516.

Support to that proposition is found in the fact that the assignee is authorized under the order of the court to redeem or discharge any mortgage or conditional contract or pledge or deposit, or lien upon any property, real or personal, whenever payable, and to tender due performance thereof, or to sell the same, subject to such mortgage, lien, or other incumbrances; the provision being that the debtor shall, at the request of the assignee, and at the expense of the estate, make and execute any instruments, deeds, and writings which may be proper to enable the assignee to possess himself fully of all the assets of the bankrupt.

Other provisions of the Bankrupt Act forcibly confirm the same views, two of which will be mentioned : 1. That the assignee shall demand and receive from any and all persons holding the same, all the estate assigned, or intended to be assigned, real or personal, and shall sell all such as is unincumbered which comes to his hands, on such terms as he thinks most for the interest of the creditors, subject to the right of the court for cause shown to make such order concerning the time, place, and manner of sale, as will, in its opinion, promote those objects.    2. That the assignee shall have the like remedy to recover all said estate, debts, and effects, in his own name, as the debtor might have had if the decree in bankruptcy had not been rendered, and no assignment had been made.    14 Stat. 524.

Bankruptcy courts have original jurisdiction in their respective districts of all matters and proceedings in bankruptcy, and are authorized to hear and adjudicate upon the same, according to the provisions of the Bankrupt Act.  They have full author-

ity to compel obedience to all orders and decrees passed by them in bankruptcy, by process of contempt and other remedial process, to the same extent that the circuit courts now have in any suit pending therein in equity.

Assignees are in the first instance chosen by the creditors; but they may be removed by the court, after due notice, for any cause which, in the judgment of the court, renders such removal necessary or expedient. Id. 525.

Authority for a creditor to bring suit to recover the property or rights of property of the bankrupt, under any circumstances, is certainly not given in the Bankrupt Act, nor is any such pretence set up by the complainant. Instead of that, he admits, what cannot be denied, that the entire property of the bankrupt, except what is reserved from the operation of the Bankrupt Act, vests in the assignee by virtue of the instrument of conveyance required to be made as soon as the assignee is appointed and qualified.

Due conveyance of the kind was made in this case, nor does he attempt to controvert the proposition that the assignee is the only party designated by the Bankrupt Act as the proper claimant of the bankrupt's property and estate. The grounds of recovery, as stated in the bill of complaint, are that before filing the same he made application to the assignee to proceed by bill in chancery or other proper mode, or allow his name to be used for the purpose, to subject the said property and rights of the bankrupt, fraudulently concealed and retained, and to convert the same into money, to be paid and distributed to the creditors, which he as such assignee declined and refused to do.

Viewed in the light of those allegations, the theory of the complainant is that the assignee, inasmuch as he declined to comply with the request, and refused either to bring the suit or to allow his name to be used to recover the property and rights of property of the bankrupt, was guilty of a fraud against the creditors; and that the latter, by virtue of such request and refusal, had a right to seek a remedy in their own names, not only against the bankrupt and the possessor of the concealed property and estate, but also against the. assignee, who is deemed to be responsible for the concealed property. Such a remedy, it is conceded, does not grow out of or depend upon the

bankrupt law; but the argument is, that it is founded upon the enlarged principles of equity which adapt themselves to the exigencies of the case, and enable the court to mould the decree to suit the various equities arising between the parties to the litigation.

Authorities are cited to prove that the person for whose benefit a trust is executed, who is to be the ultimate receiver of the money, may maintain a suit in equity to have it paid to himself; and the proposition is advanced, that, where a trustee is guilty of what the law considers a breach of trust in regard to the trust property, the *cestui que trust* may invoke the aid of equity to give him such remedy in the premises as the circumstances may require.

Grant that, and the concession shows to a demonstration that the present suit cannot be maintained, as the record shows that the complainant and respondents are citizens of the same State; and of course the Circuit Court had no jurisdiction of the case, it being conceded by the complainant that the remedy sought does not grow out of or depend upon the bankrupt law.

Conceded or not, it is clear that the suit in this case finds no support in the provisions of the Bankrupt Act, as sufficiently appears from the references to that act already made; but if more be needed, it will be found in the section which provides that no creditor whose debt is provable shall be allowed to prosecute to final judgment any suit at law or in equity therefor against the bankrupt until the question of the debtor's discharge shall have been determined. Rev. Stat., sect. 5106.

Appellate jurisdiction, as exercised under the twenty-second section of the Judiciary Act, is not conferred upon the circuit courts in any case under the Bankrupt Act, where the ruling, order, decision, or decree of the Circuit Court is made or rendered by that court in a summary way. All such rulings, orders, decisions, or decrees must be revised, if at all, under the first clause of the second section of that act, in respect to which the determination of the Circuit Court is final and conclusive. *Knight* v. *Cheney,* 5 Bank. Reg. 313; *Morgan* v. *Thornhill,* 11 Wall. 65.

Creditors can have no remedy which will reach property

fraudulently conveyed, except through the assignee, for two reasons: 1. Because all such property, by the express words of the Bankrupt Act, vest in the assignee by virtue of the adjudication in bankruptcy and of his appointment. 2. Because they cannot sustain any suit against the bankrupt.

Property fraudulently conveyed vests in the assignee, who may recover the same and distribute its proceeds as the Bankrupt Act requires. Such a conveyance, says Curtis, is no effectual conveyance as against the interest intended to be defrauded, which is represented by the assignee, so far as respects all creditors who prove their claims. They can have no remedy which will reach such property except through the assignee, not only for the reasons already assigned, but because their remedies are absorbed in the great and comprehensive remedy under the commission by virtue of which the assignee is to collect and distribute among them the property of their debtor, "to which they are justly and legally entitled." *Carr* v. *Hilton*, 1 Curt. C. C. 234.

Opposed to that proposition is the case of *Franklin* v. *Farr* (2 Eq. Ca. Abr. 102), in which it was held that, if the assignee refuses to bring a bill that is for the benefit of the bankrupt's estate, the creditor has the right to bring such a bill, under peril of costs.

Enough has been already remarked to show that the Bankrupt Act makes it the express and positive duty of the assignee to collect and distribute all the assets of the bankrupt, including property fraudulently conveyed prior to the decree of bankruptcy, and that authority is given to him to sue for the same under the direction and control of the court, which may, in its discretion and for good cause shown, require the assignee by a specific order to take any proper step to secure the due administration of the bankrupt law, and the full and complete protection of the rights of the creditors interested in the proceedings; that ample means are placed in the hands of the creditors to enable them to inform the court of the necessity of any particular proceeding to be taken for that purpose, to which it may be added that the power of the court to compel a compliance with any such order is plenary and beyond all doubt; or if the assignee fails to do so, to

punish him for contempt, or to remove him and appoint another in his place. Bump, Bankruptcy (10th ed.), 147.

Plenary as the powers granted to the bankrupt courts are, there is no occasion for any departure from them in order to the complete execution of the duties imposed, which of itself is a sufficient reason for holding that the rule laid down in the preceding case is not applicable in our bankrupt system. Rev. Stat., sect. 5039.

Neither the assignee nor any creditor can have any greater right under the Bankrupt Act than the act itself confers; and if it be conceded that the remedy sought in this case does not depend upon the Bankrupt Act, then it is clear that the court below had no jurisdiction of the case, unless the proposition can be sustained that such a suit may be maintained in a circuit court, where both parties are citizens of the same State.

Nor is that the only objection to the theory advanced by the complainant; for if one creditor may sue in such a case, then all may sue, and the result might be that the proceedings in bankruptcy would be transferred not only to the Circuit Court, but to every State court within whose jurisdiction a defendant may reside.

Even if the case referred to, and others of like character, were good law in the courts of the country where they were made, still it is clear that the question before the court must be controlled by the provisions of our Bankrupt Act; but the doctrine of that case has long since been overruled, and is no longer regarded as correct, even in the jurisdiction where it was made, of which there is abundant evidence.

Creditors of an insolvent, said Lord Cottenham, cannot maintain a suit to recover the property or rights which belong to the insolvent, and the same rule applies to suits for a similar object brought by the insolvent himself. *Heath* v. *Chadwick*, 2 Ph. 649.

*Prima facie* the bankrupt is divested of the whole estate, nor have the creditors any right to sue; but if it be represented that the assignees will not sue, the court having jurisdiction of the matter may direct the recusant assignees to proceed, or may give the bankrupt or a creditor the right

to institute the suit in the name of the assignee, first indemnifying the assignee against costs. *Benfield* v. *Solomons,* 9 Ves. 83.

Attempt to maintain such a suit was made in *Yewens* v. *Robinson* (11 Sim. 105); but the assignees demurred to the bill of complaint, and the court sustained the demurrer, holding that the true method to proceed in such a case was to apply to the court of insolvency to have the assignees removed and others appointed in their place.

Application was made to the court in the case of *Ex parte Ryland,* and the petitioning creditor was allowed by the court to sue in the name of the assignee, first giving the assignee indemnity against cost and damage. 2 Deac. & Chit. 393. Corresponding decision was made in the case of *Hammond* v. *Atwood* (3 Madd. Ch. 158), the court holding that the proper course was to apply to the court by petition to have the assignees removed and new assignees appointed. *Major* v. *Aukland,* 3 Hare, 77.

Bankrupts uncertificated cannot file a bill of complaint against their assignees for an account; nor can the bankrupt obtain such relief by charging fraud and collusion between the assignees and a third party, the true remedy being a petition for relief to the court of original jurisdiction. *Tarleton* v. *Hornby,* 1 You. & Coll. 193.

Suffice it to say that the law is now well settled in the parent country that creditors cannot maintain any such suit against the assignee, for the purpose set forth in the present bill of complaint.

Strong support to the conclusion is also derived from the fact that cases arise in bankruptcy proceedings where the assignee is not bound to take possession of some particular asset which passed to him by the instrument of assignment. Examples of the kind, such as certain leasehold estates which would burden instead of benefiting the fund to be distributed, are given by Judge Ware in the case of *Smith* v. *Gordon* (6 Law Rep. 317), to which reference is made as showing the principle of the rule.

Leasehold estates pass to the assignee under the English bankrupt laws; but the assignee, in certain cases, is not bound

to take the lease of the estate where the rent is greater than the value of the lease, as the effect would be to burden the estate of the bankrupt, and to diminish the fund to be distributed among the creditors. *Copeland* v. *Stephens*, 1 Barn. & Ald. 604; *Amory* v. *Lawrence*, 3 Cliff. 535; *Fowler* v. *Down*, 1 Bos. & Pull. 157; *Fox* v. *Webb*, 7 T. R. 397; *Wilkins* v. *Fry*, 1 Meriv. 244.

It has long been a recognized principle of the bankrupt law, says Robson, that the assignees of a bankrupt are not, in certain cases, bound to take property of an onerous or unprofitable character, which would burden instead of benefiting the estate; and there are numerous decisions, English and American, which support the proposition; nor are the creditors without remedy in such a case, even if the assignee should erroneously or unwisely fail to take such possession, as the creditors may, by petition, apply to the court of original jurisdiction to compel him to carry out their wishes; and if the District Court should deny their petition, they would have the right to demand a review of the decision by the Circuit Court, under the first clause of the second section of the Bankrupt Act. Robson (3d ed.), 398.

*Decree affirmed.*