## YOUNG *v.* KIMBALL.

In trover, brought by a mortgagee of a chattel against one who took it from the plaintiff's possession, it is no defence that before the mortgage was made the mortgageor had orally promised to send the chattel to the defendant to be held and sold as a pledge and security for an advancement of money made by the defendant to the mortgageor, and the plaintiff was aware of the mortgageor's promise when the mortgage was made, and had received from him, in part payment of his debt, a part of the money by him received from the defendant.

In such an action, it is no defence that the mortgageor's assignee in bankruptcy can recover the chattel, but does not claim it.

TROVER, for six cases of socks. Plea, the general issue. Facts found by the court. The defendant is an agent of Whittemore, Cabot & Co., of Boston, who are the defendants in interest, and are to be regarded as the defendants of record. The value of the socks is $592.80. Each party claims them by virtue of a title derived from one Quinn, who manufactured them, and whose custom was to send his goods to the defendants to be sold by them on commission. January 8, 1876, they owed him about $203, and had goods of his worth about $1,277. On that day Quinn went to Boston, where they paid him $2,100, and he pledged to them his goods then in their hands, and agreed to send them the six cases of socks (which were then in his mill) immediately, or as soon as two cases of them, not then packed, could be finished and packed. The socks were to be held by the defendants in pledge, and sold on commission, as Quinn's other goods in their hands were to be held and sold.

Quinn, being indebted to the plaintiff, paid him $400 of the money he obtained from the defendants. The plaintiff · immediately caused Quinn's property to be attached to secure the remainder of his debt. January 27, 1876, Quinn mortgaged the socks and other property to the plaintiff to secure his debt, and the attachment was discharged. February 5, 1876, the plaintiff took possession of the mill and the property in it, including the socks, upon an agreement with Quinn that the plaintiff should finish manufacturing the stock and goods in the mill, sell the same, and, first paying the plaintiff's debt out of the proceeds, apply the balance to the payment of Quinn's other debts. Quinn and the plaintiff knew that Quinn was insolvent; and the mortgage was made and received for the purpose of giving the plaintiff a preference over other creditors. March 1, 1876, the defendants took the socks from the plaintiff's possession. March 27, 1876, Quinn was adjudged a bankrupt, and an assignee was appointed May 2, 1876. The assignee has not claimed and does not claim the socks. When

the plaintiff took the mortgage, and when he took possession of the mortgaged property, he was put upon inquiry as to the transaction of January 8 between Quinn and the defendants, and he knew that the defendants claimed the socks.

*Wait*, for the plaintiff.

The only title the defendants were to acquire, according to the terms of their contract with Quinn, was as pledgees. The title to the goods was never to vest in them; but they were to receive them as pledgees, and to sell them on commission as agents of Quinn. We suppose it to be one of the most elementary doctrines of the law that actual delivery is indispensable to a pledge, and that without it the pledgee acquires no claim or title to the subject of the pledge. Story Bailm., s. 297; 2 Kent. Com. 581. As against Quinn, the title to the goods never vested in the defendants. The contract was executory, and all the latter gained by it was a right of action for its breach. This case is in all substantial respects identical with *Brown* v. *Wiggin*, 16 N. H. 312, which *Parker, C. J.,* pronounced "a very plain case." See also *Colby* v. *Cressy*, 5 N. H. 237; *Walcott* v. *Keith*, 22 N. H. 209. It can make no difference that the plaintiff was put upon inquiry, and knew that the defendants claimed the goods. If he had known fully the details of the arrangement, it would have made of it no more than a contract of pledge, which, for want of delivery, amounted to no more than a mere executory contract. Especially, as the plaintiff was a creditor of Quinn, he had a right to secure himself, notwithstanding this unperfected pledge.

If the transaction had been an absolute sale of the goods to the defendants, we submit that even then, the plaintiff being a creditor of Quinn, and taking his mortgage for the purpose of securing his claim, would have a better title than the defendants. The case would be within that long and uniform line of cases beginning with *Coburn* v. *Pickering*, 3 N. H. 428, and ending with *Cutting* v. *Jackson*, 56 N. H. 253. An attachment would certainly have held the goods; and why should not a mortgage, with actual possession, taken for the same purpose? Quinn was in possession of the goods in the ordinary way of trade, with power to deal with them as his own. And notwithstanding some indefinite information in regard to the transaction with the defendants, while the goods remained in the possession of his debtor, the plaintiff had a right to secure his claim upon them in the way he did, and when he did so he acquired a better title than that of the defendants as pledgees without possession. The principle of *Putnam* v. *Osgood*, 52 N. H. 148, is strongly in point.

That the assignee in bankruptcy might have claimed these goods against the plaintiff, we do not deny. Had the defendants, after taking them, delivered them over to the assignee, we do not deny

that it would have been a delivery to a person having title, and gone in mitigation of the damages in this action. This they did not do. And they have no title even as against Quinn, much less as against the mortgagee of the latter in actual possession. As against the defendants, had there been no bankruptcy, the title of the plaintiff, as we submit, was clear and unquestionable. Were they any less wrong-doers in depriving the plaintiff of his possession, because of the bankruptcy? The assignee does not claim, and never has claimed, this property. As between the plaintiff and the defendants, the case stands precisely as if there were no bankruptcy. They did not, in depriving the plaintiff of the property, act under, or in any way in the interest of, the bankrupt law; and they have never claimed, and do not now claim, to hold it in any such view. Their whole course was, and their present position is, in direct opposition to the bankrupt law, and for the purpose of defeating its operations upon this property. How, then, can they invoke its provisions for their protection? The bankrupt law having no purpose to serve by interposing between these parties, will leave them to their respective rights and liabilities under the general law of the land. This case is directly within that supposed by the chief-justice in *Towle* v. *Davenport*, 57 N. H. 151, and should be governed by the principle there suggested. Until the assignee elects to claim the property, no stranger to his title can set it up in his name.

It is claimed that by s. 35 of the bankrupt act *(s.* 5128, Rev. St. U. S.) such a mortgage as this is made void. But that section, like all statutes, must receive an interpretation in consonance with the general purposes of the act, which is, and is only, to secure a fair distribution of the property of insolvent debtors among all their creditors. Such a construction as is claimed by the defendants would be entirely beyond the purview and general purposes of the bankrupt law. But the language of this section itself shows plainly that it contains no such legislative intent. It is, " That if any person, being insolvent,  *  *  *  with a view to give a preference,  *  *  *  makes any payment, pledge, assignment, transfer, or conveyance of any part of his property,  *  *  * the person receiving such payment, pledge, assignment, transfer, or conveyance, having reasonable cause to believe such person is insolvent, and that such attachment," etc., "is made in fraud of the provisions of this act, the same shall be void, and the assignee may recover the property, or the value of it," etc. It is plain from this language that it was never intended to render any such transfer void, except as against the operation of the bankrupt act. This mortgage was doubtless void at the election of the assignee in bankruptcy; but as against the rest of the world it is like any other mortgage, and the plaintiff is like any other mortgagee in possession. *Hathaway* v. *Brown*, 18 Minn. 414; *Frenzel* v. *Miller*, 37 Ind. 1; Bump Bankruptcy (10th ed.) 840. Mr. James, in his

book on Bankruptcy, 157, says,—"Such payments and assignments are void only in reference to proceedings under the bankrupt law," and cites in support of the proposition, *Seaman* v. *Stoughton,* 3 Barb. Ch. 344, and *Dodge* v. *Sheldon,* 6 Hill 9. In *Hanson* v. *Herrick,* 100 Mass. 323, the defence was that the property had been delivered by the defendant to the assignee; and the court went no further than to hold that this might be shown in mitigation of the damages, though they stated that they did not intend to decide the evidence competent only to that extent. In *Blanchard* v. *McKey,* 125 Mass. 124, the court very plainly make a distinction between a sale fraudulent as against creditors generally, and " fraudulent only as against an assignee in bankruptcy ;" and the case is, in its whole aspect, clearly an authority in favor of our view of the law.

*Norris & Albin,* for the defendants.

The defendants have a good title as against Quinn and the plaintiff. *Tibbetts* v. *Flanders,* 18 N. H. 284; *Brown* v. *Warren,* 43 N. H. 430; *Meyerstein* v. *Barber,* L. R., 2 C. P., 38; *S. C.,* L. R., 4 H. L., 317, 336; *Reeves* v. *Capper,* 5 Bing. N. C. 54.

If the defendants have not a good title as against the plaintiff, the plaintiff's mortgage is void under the bankrupt law. *Hanson* v. *Herrick,* 100 Mass. 323; *Blanchard* v. *McKey,* 125 Mass. 124. Quinn's assignee may claim the goods hereafter; and his delay cannot give the plaintiff a title. *Hall* v. *Whiston,* 5 Allen 126.

Doe, C. J. On this record, the question does not arise whether the defendants have a remedy of specific performance in equity. 1 Story Eq., *ss.* 714–721, 746, 788–790. There was no actual or constructive delivery of the goods to the defendants. A mere contract to pledge even specific goods, and even although the money is actually advanced upon the faith of the contract, is not sufficient to carry the legal property in the goods. *Meyerstein* v. *Barber,* L. R., 2 C. P., 38, 51.

The plaintiff's knowledge of the executory agreement, which did not transfer the legal title nor create a legal lien, would not make the defendants' right of action against Quinn upon that agreement superior to the plaintiff's mortgage in this suit at law. The plaintiff's knowledge that the defendants were not pledgees would not make them pledgees. Nor does the fact that the $400 paid the plaintiff by Quinn had been obtained by Quinn from the defendants upon his promise to give them a lien upon the goods, affect the legal title of the goods, which is the subject of controversy in this suit.

The bankruptcy proceedings against Quinn are not a defence. His assignee is not bound to recover all property to which he is legally entitled. *Glenny* v. *Langdon,* 98 U. S. 20, 31. And upon

the assignee's abandonment of this property, the bankrupt law does not give it to him who is strong enough to capture and hold it.   *Lane* v. *Moore, ante,* 80.

*Judgment for the plaintiff.*

STANLEY, J., did not sit: the others concurred.