CHATFIELD LEONARD, AS RECEIVER, ETC., APPELLANT, *v.* CALCINA B. CLINTON AND OTHERS, RESPONDENTS.

*Policy of insurance — when the wife's interest therein is not subject to the claims of her creditors — when the husband's creditors cannot set aside an assignment of a policy made by him — 1858, chap. 314.*

The amount received by a wife upon a policy of insurance, issued upon the life of her husband for the benefit of herself and children, is not subject to the claims of her creditors.

Where policies taken out by a husband upon his own life, payable to his representatives, are assigned by him to his wife, who thereafter, with the intent to defraud her creditors, assigns the policies to her children, the creditors of the wife are entitled to recover from her children the surrender value of the policies at the time of their assignment to them.

The right of a creditor, after the recovery of a judgment and the return unsatisfied of an execution issued thereon, to bring an action to set aside a fraudulent conveyance of his property, made by the debtor, is not affected by the fact that the debtor has made a general assignment, and that under chapter 314 of 1858, the assignee is entitled to bring an action for the same purpose, provided no such action has in fact been brought by the assignee.

APPEAL from a judgment in favor of the defendants, entered on the decision of the court after a trial at a Special Term.

This action was in the nature of a creditor's bill, and was brought to set aside the assignment of three life insurance policies made by the defendant Calcina B. Clinton to the defendants Ella, Anna, Fanny and Abbie Clinton, as fraudulent and void as to the creditors of the defendant Calcina B. Clinton ; and to recover of the defendants Ella, Anna, Fanny and Abbie, an amount sufficient to pay the judgments represented by the plaintiff, with interest, costs in proceedings supplementary to execution and costs of this action.

On the 11th day of February, 1860, the New York Life Insurance Company issued a policy of insurance for the sum of $6,000 upon the life of William M. Clinton for the sole use of his wife, the defendant Calcina B. Clinton, and their children.

On the 20th day of July, 1867, the said William M. Clinton duly assigned to the defendant Calcina two policies of insurance upon his life, one for $5,000 issued July 21, 1865, and the other for $2,500 issued February 27, 1867.

From the year 1871 down to the 1st day of June, 1878, the defendant Calcina B. Clinton was engaged in and doing business on her own account as a manufacturer of cotton cloth, separate from her husband, during which time the indebtedness accrued for which the judgments represented by the plaintiff herein were recovered. During this time she paid the annual premiums upon said $5,000 and $2,500 policies out of her separate estate, and also the annual premiums upon the $6,000 policy.

On the 1st day of June, 1878, the defendant Calcina B. Clinton was insolvent and unable to pay her debts, and on that day she executed an assignment of the $5,000 and $2,500 policies to the defendants Ella, Anna, Fanny and Abbie Clinton, and also of her interest in the $6,000 policy for the consideration of five dollars. The $5,000 and $2,500 policies were then worth and could have been surrendered to the companies issuing the same for at least the sum of $732.44, and the defendant Calcina B. Clinton had knowledge that they could be so surrendered. On the 2d day of July, 1878, the defendant Calcina B. Clinton executed a general assignment for the benefit of creditors to the defendant William Lake. The defendant Lake is the general guardian of the defendants Fanny and Abbie Clinton, who are minors.

In the month of February, 1880, William M. Clinton died, and

subsequently thereto and before the commencement of this action, the amount due on the $5,000 and $2,500 policies, to wit, the sum of $7,500, and five-ninths of the $6,000 policy, to wit, the sum of $3,333.31, was paid by the companies issuing the same to the defendants Ella, Anna, Fanny and Abbie Clinton, four-ninths of the $6,000 policy having been paid to the children of said William M. Clinton by a former wife.

The trial judge found as conclusions of law that the assignment by Calcina B. Clinton to the defendants Ella, Anna, Fanny and Abbie Clinton of her interest in the $6,000 policy was not fraudulent or void. That the assignment by her to the same defendants of the $5,000 and $2,500 policies were fraudulent and void as to her creditors to the extent of the surrender value of said policies at the time of the assignment. But that the right of action to set the assignments aside, and to recover out of the money paid to the defendants Ella, Anna, Fanny and Abbie Clinton, the surrender value of said policies, was vested in the defendant Lake as the general assignee of the defendant Calcina B. Clinton, and dismissed the complaint, with costs.

*John Lewis,* for the appellant.

*James A. Lynes,* for the respondents.

RUMSEY, J.:

The facts in this action are stated as shortly as may be in the decision of the court.

The policies of life insurance in question are of two kinds. The policy for $6,000 was issued on the life of William M. Clinton, the husband, payable to his wife and their children at his death. It is within the provisions of the statute authorizing the insurance of the life of the husband for the benefit of the wife. (Laws of 1870, chap. 277, amending chap. 80, Laws of 1840, *Bloomingdale* v. *Lisberger*, 24 Hun, 356). Before 1873 the wife could not assign these policies. (*Eadie* v. *Slimmon*, 26 N. Y., 9; *Barry* v. *Equitable Life Assurance Society*, 59 id., 587.) Chapter 821, Laws of 1873, permitted a married woman, having no children, to assign these policies by deed. Mrs. Clinton had children, and her attempted

assignment was not a deed. There was therefore no assignment, and her children took no title to her share of the policy. (*Bloomingdale* v. *Lisberger*, 24 Hun, 356.) The payment by the insurance company to the children, of Mrs. Clinton's share, did not discharge it, and they took nothing for which they can be compelled to account to her creditors.

We do not think that policies taken out under this act are subject to the claims of the creditors of the wife. They are intended as a provision for the support of the widow and children of the husband after his death. When the statute authorizing such policies to be issued was first passed, a wife would not under ordinary circumstances have creditors. The law has from time to time since then extended her rights and increased her liabilities, but it has not changed the nature of her contingent interest in these policies, nor has it decreased the necessity for keeping them for her support. The decisions seem to regard them as free from the claims of creditors. (*Barry* v. *Equitable Life Assurance Society*, 59 N. Y., 593, 594; *Smillie, Trustee,* v. *Quinn,* 25 Hun, 332.) As to the policy for $6,000 we are clear the judgment is right, and the creditors of the wife can reach no part of it.

The other two policies were when issued payable to the personal representatives of William M. Clinton. At that time they were not within the statute above cited. The defendants seek, however, to bring them within the equity of the statute because of the fact that after they were issued William M. Clinton assigned them to his wife Calcina B. Clinton. When the act of 1840 was passed, there was no way other than under its provisions by which a husband's life could be insured for a gross sum for the benefit of his wife. (DENIO, Ch. J., *Eadie* v. *Slimmon*, 26 N. Y., 9, 17.) The policy made originally payable to his personal representatives, could not be assigned to her for the reason stated by Judge DENIO in the foregoing citation, and for the further reason that an assignment from the husband to the wife was void at law. This policy could not then, before the passage of the married woman acts, have been brought within the statute of 1840, by this assignment.

The right to take this assignment came to her by the act of 1860 (ch. 90), and whatever property that act permits her to take, she takes as her sole and separate property, and she may use, collect and invest it

in her own name. These two policies were her husband's. The assignment to her, which could become effective only by the force of the married woman acts, transferred them to her to hold as she held all other property and not otherwise. We think, therefore, that her interest in these two policies was subject to the claims of her creditors to some amount. That amount could not be greater than the surrender value because neither Mrs. Clinton nor her assignee was called upon to keep up the premiums for the benefit of creditors.

The learned justice at Special Term held that the transfer of these two policies was fraudulent as to the plaintiff, but refused to permit him to recover because the assignee for the benefit of creditors has the exclusive right to maintain this action. The correctness of this conclusion is the only question to be examined.

Before the year 1858 a transfer made by a debtor in fraud of creditors could be attacked only by a creditor who had either by judgment and execution returned, or by attachment acquired, a lien upon the property so transferred. The assignee for the benefit of creditors stood in the shoes of his assignor, and was bound by such a transfer and could not question or attack it. (*Brownell* v. *Curtis,* 10 Paige, 211.)

In 1858 chapter 314 of the laws of that year provided that an assignee for the benefit of creditors might for their benefit disaffirm, treat as void and resist all acts done or transfers or agreements made in fraud of the rights of creditors.

This act gave a new remedy in favor of creditors at large which the assignee might enforce without acquiring a specific lien, and in spite of his situation as successor of the fraudulent assignor. (*Southard* v. *Benner,* 72 N. Y., 424.) But the act is strictly an enabling statute; it confers a right but takes away none; it provides for certain creditors a new remedy, but it contains no negative words. In such a case the remedy which it provides is cumulative and not exclusive. (*Crittenden* v. *Wilson,* 5 Cow., 165.) The statute does not vest in the several trustees named in it the title to the property transferred in fraud of creditors, as the bankrupt law does, but it simply dispenses as to them with an act which the common law required as a prerequisite to maintaining the action. As the statute permits the assignee to bring this action for the benefit of creditors, it may be that where an assignment had been made with-

out preferences the court, having in view an equal distribution of the property, would restrain a single creditor from pursuing his action to set aside a fraudulent transfer where the assignee had sued for the same purpose. But until such a suit was brought there is nothing in the statute to prevent any creditor who has obtained his lien from attacking a fraudulent conveyance as he might before the passage of the act.

The case of *Glenny* v. *Langdon* (98 U. S., 20), cited to sustain the exclusive right of the assignee, is not in point. That case arose under the bankrupt law which transferred to the assignee in bankruptcy the entire title to the property conveyed by the bankrupt in fraud of creditors, so that such an action could not be brought by a creditor though the assignee refused to bring it. (*Trimble* v. *Woodhead*, 102 U. S., 647; *Moyer* v. *Dewey*, 103 id., 301.) The *dicta* in *Dewey* v. *Moyer* (72 N. Y., 70) to the effect that a creditor can in any case maintain an action to set aside a fraudulent transfer, where it appears that bankruptcy proceedings have been had and an assignee appointed who has failed to sue, are overruled by the Supreme Court of the United States in the cases cited above, and the law is established that the assignee by express operation of law has the exclusive right to bring such an action. So in *Bate* v. *Graham* (11 N. Y., 237) the *dictum* of Judge DENIO that ordinarily a creditor cannot maintain an action against a fraudulent vendee of a deceased debtor, or against him and the administrator to set aside the fraudulent transfer and have the property held under it administered as assets, is based on the provision of the statute which takes away the liability of the fraudulent vendee to be sued as executor of his own wrong and makes him responsible only to the personal representatives. (2 R. S., 449, § 17.) But neither class of cases apply to this action for the statute in question takes away no right of action or right of property.

It follows that the conclusion of the learned justice that the assignee for the benefit of creditors had the exclusive right to maintain this action was erroneous, and the judgment must be reversed and a new trial ordered, costs to abide the event.

LEARNED, P. J., and OSBORN, J., concurred.

Judgment reversed, new trial granted, costs to abide event.