CEDAR BAYOU BAPTIST
CHURCH, Appellant,

v.

GREGORY–EDWARDS, INC., Appellee.

No. 14–97–01429–CV

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 4, 1999.

Don J. Knabeschuh, Houston, H. Douglas Laycock, Austin, for appellant.

Paul W. Nimmons, Jr., Houston, for appellee.

Before Justices EDELMAN, ANDERSON and SEARS.*

**OPINION**

ROSS A. SEARS, Senior Justice (Assigned).

The Cedar Bayou Baptist Church (the church) appeals from a final order requiring

* Senior Justice Sears is sitting by assignment.

it to turn over alleged fraudulently transferred offerings, of Leland Collins, to his creditor, Gregory–Edwards. In eight points of error, the church contends: (1) the Religious Liberty and Charitable Donation Protection Act of 1998 now controls and is dispositive; (2–3) the constructive fraudulent transfer provisions of the Federal Bankruptcy Code, 11 U.S.C. § 548(a)(2) (1994), and the Texas Business and Commerce Code, Tex. Bus. & Comm.Code § 24.006(a) (1987), prohibit recovery of contributions to churches made in good faith and in the ordinary course of the relationship between the church and its members; (4–6) the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.* (1994), the Free Exercise Clause of the United States Constitution, U.S. Const. amend. I, and the Freedom of Worship Clause of the Texas Constitution, Tex. Const. art. I, § 6., prohibit the application of federal and state law from authorizing recovery of contributions made in good faith and in the ordinary course of the relationship between the church and its members; (7) the claims are barred by the applicable statute of limitations; and (8) the claims not timely purchased from the Trustee in Bankruptcy are barred by the federal bankruptcy proceeding. We reverse.

## Background

On July 1, 1986, Gregory–Edwards sued Collins for money it erroneously paid out at the dissolution of a partnership. Gregory–Edwards received a judgment against Collins and two other partners, jointly and severally, for $90,084.00 on November 10, 1991. Collins worked throughout all relevant periods of time resulting in a continuing income. As he had done in the past, he tithed ten percent of this annual income to the Cedar Bayou Baptist Church, from October 15, 1988 to October 14, 1992. On October 14, 1992, Collins and his wife filed voluntary bankruptcy under chapter eleven of the United States Code, and the bankruptcy trustee was appointed on December 1, 1992.

On May 19, 1994, Gregory–Edwards served the church with a complaint in the Collins bankruptcy case, alleging Collins's

gifts to the church were fraudulent transfers. On September 14, 1994, the bankruptcy court dismissed Gregory–Edwards's complaint without prejudice and without a written statement of its reasons. However, William Gregory testified he understood the dismissal was based on Gregory–Edwards's lack of standing.

On February 24, 1995, Gregory–Edwards purchased from the Trustee of the Collins Estate the right to collect any money owed to the bankruptcy estate by the Cedar Bayou Baptist Church. Gregory–Edwards filed suit against the church on March 2, 1995, alleging Collins's transfers made to the church from October 15, 1988 to October 14, 1992 were fraudulent because Collins was insolvent and did not receive a reasonably equivalent value in exchange for his offerings. The trial court agreed and entered a $23,428 judgment in favor of Gregory–Edwards.

## Discussion

The Religious Liberty and Charitable Donation Protection Act of 1998, passed unanimously in both houses of Congress and signed by President Clinton on June 19, 1998, controls the outcome of this case. Pub.L. No. 105–183, 112 Stat. 518 (1998) [hereinafter Religious Liberty and Charitable Donation Protection Act of 1998]. This legislation was tailored to cover the exact type of charitable contributions which the trial court avoided in favor of the creditor.

The Act amends the Bankruptcy Code to eliminate claims to recover charitable contributions under federal and state law. Prior to the Act, trustees were given the right to avoid transfers made or incurred within one year before the date of the filing of bankruptcy. *See* 11 U.S.C. § 548(a)(1) (1993 & Supp.1998). However, the new Act modifies this so that "[a] transfer of a charitable contribution to a qualified religious or charitable entity or organization shall not be considered to be ... [voidable] if the amount of that contribution does not exceed 15% of the gross annual income of the debtor for the year in which the transfer of the contribution was made."[1] Religious Liberty and Charita-

---

1. A charitable contribution means a contribution, consisting of a financial instrument or cash,

ble Donation Protection Act of 1998 (amending 11 U.S.C. § 548(a)(2)(A)). Congress expressly preempted federal and state law by stating: "Any [pending or subsequent] claim by any person to recover a transferred contribution described [above] under Federal or State law in a Federal or State court shall be preempted by the commencement of the case." *Id.* (amending 11 U.S.C. § 544(2)).

■■■ The contributions made by Collins are directly covered by the new Act. Collins made charitable contributions, by cash or check, to the Cedar Bayou Baptist Church consisting of 10% of his annual income. Although Collins's actual bankruptcy case was not pending at the time the Act was enacted, Gregory–Edwards's claim was a derivative of Collins's bankruptcy proceeding and was still pending at the time the Act was enacted.[2]

Gregory–Edwards claims in the alternative under state and federal law to avoid the transfers Collins made to Cedar Bayou Baptist Church. Under federal law prior to the amendments, Gregory–Edwards would have only been allowed to avoid transfers made or incurred within one year before the date of the filing of bankruptcy. 11 U.S.C. § 548(a)(1). The new Act now prevents "qualifying transfers" from being avoided. Therefore, any of the transfers the trial court voided under section 548(a)(1) are expressly preempted by the new Act. *See* Religious Liberty and Charitable Donation Protection Act of 1998. In addition, any state law claims via section 544, a strong arm statute, are also expressly preempted. *See id.* Therefore, we hold the new Act expressly preempts and controls all the alleged fraudulent transfers with respect to federal law.

■■■ A state law is preempted and without effect if it conflicts with federal law. *See*

*Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). A federal law may expressly preempt state law. *See Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). Preemption may also be implied when the scope of a statute indicates Congress intended federal law to occupy the area exclusively or when state law actually conflicts with federal law. *See Freightliner Corp. v. Myrick,* 514 U.S. 280, 287, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995). An actual conflict between state and federal law arises when "it is 'impossible for a private party to comply with both state and federal requirements,' or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Myrick,* 514 U.S. at 287, 115 S.Ct. 1483 (quoting *English v. General Elec. Co.,* 496 U.S. 72, 78–79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990)).

■■■ The Texas Fraudulent Transfer Act does not limit recovery to the one year prior to the filing of bankruptcy, but instead allows a creditor to avoid transfers up to four years from the date the action was brought. *See* TEX. BUS. & COM.CODE ANN. § 24.010(a)(2) (Vernon 1987). However, for Gregory–Edwards's claim to have survived under the Texas Fraudulent Transfer Act and been heard while Collins's bankruptcy was still pending, its claim must have been wholly independent, or it would have vested in the trustee when Collins initiated his bankruptcy.[3] *See Glenny v. Langdon,* 98 U.S. 20, 22, 25 L.Ed. 43 (1878); *In re Mortgageamerica Corp.,* 714 F.2d 1266, 1275 (5th Cir.1983). Gregory–Edwards has not demonstrated an independent claim under § 24.006(a). Even assuming Gregory–Edwards had an indepen-

made by a natural person to an organization organized and operated exclusively for religious purposes. *See* 11 U.S.C. § 548(d)(1); I.R.C. § 170(c) (1994).

**2.** Gregory–Edwards alleges its claim arose from an assignment of the trustee's rights, an abandonment by the trustee failing to act within the required statute of limitations, or from an independent claim. Even if the claim was independent initially under Texas law, once Collins filed bankruptcy all claims vested in the trustee. *See Glenny v. Langdon,* 98 U.S. 20, 22, 25 L.Ed. 43

(1878); *In re Mortgageamerica Corp.,* 714 F.2d 1266, 1275 (5th Cir.1983). Therefore, we do not need to decide how Gregory–Edwards claim arose because under all scenarios this claim is a derivative of the Collins bankruptcy proceeding and is still pending.

**3.** Gregory–Edwards also asserts it purchased its claim from the trustee or that the trustee abandoned it. However, under the trustee sale theory, the statute of limitations had already expired, and under the trustee abandonment theory, the statute of limitations partially barred any claim.

dent claim, it could only avoid transfers made between March 2, 1991 and October 15, 1991, notwithstanding the new Act.[4] Therefore, we find Gregory–Edwards did not have an independent claim and any claim Gregory–Edwards had vested in the trustee. *See* 11 U.S.C. § 544 (vesting all state law claims concerning property of and against the bankrupt estate in the trustee).

Congress was specific in its preemption paragraph to cover "any claim by any person to recover a [qualifying contribution] . . . under State or Federal law in a Federal or State court shall be preempted by the commencement of the case." The Religious Liberty and Donation Act of 1998. However, in the application paragraph when Congress considered which cases the new Act should apply such as pending, filed, or future claims, Congress stated: "This Act and the amendments made by this Act shall apply to any case brought under an applicable provision of title 11, United States Code, that is pending or commenced on or after the date of enactment of this Act."

We recognize that Congress in enacting the new Act's application paragraph may not have contemplated such a cause of action as we have before us, either a derivative claim from the chapter eleven proceeding or an independent claim that for some reason did not vest with the trustee. Congress, however, has spoken and clearly intended to preclude any fraudulent transfer claims with respect to any qualifying charitable contributions to religious organizations "under Federal or State law in a Federal or State court." The Religious Liberty and Charitable Donation Act of 1998. Gregory–Edwards craftily filed its complaint in an attempt to fall outside the reaches of chapter eleven of

the United States Code.[5] We express no opinion whether Gregory–Edwards even has a viable claim. However, assuming Gregory–Edwards has a viable claim that somehow did not vest in the trustee or that somehow survived the bankruptcy proceeding by being purchased from or abandoned by the trustee, Gregory–Edwards is now attempting as an assignee to do what the trustee was prohibited from doing based on the expiration of the trustee's statute of limitation and the federal preemption. Gregory–Edwards seeks the exact type of relief that Congress and the President contemplated and anticipated when enacting this legislation into law. Therefore, we hold that the new Act not only expressly preempts Gregory–Edwards's claims with respect to any of its claims under federal law, but also impliedly preempts any of its claims under the Texas Business and Commerce Code § 24.006(a) to the extent that it conflicts or stands as an obstacle to the accomplishment and execution of Congress's new legislation by allowing a creditor to avoid a qualifying charitable transfer to a religious organization consisting of less than 15% of the debtor's annual income.

In light of the Religious Liberty and Charitable Donation Act of 1998, we reverse the decision of the trial court and render judgment for appellant.

Justice EDELMAN concurs in the result only.

**4.** A wholly independent claim would not have been stayed by Collins's bankruptcy proceeding. The Collins's bankruptcy claim was filed on October 14, 1992, and the trial court found that Collins made fraudulent transfers between October 15, 1988 and October 14, 1992. The Federal Fraudulent Transfer Act only allows transfers made within one year prior to the filing of bankruptcy to be avoided. 11 U.S.C. § 548(a)(1). However, as stated earlier in this opinion the new Act preempts these transfers. Consequently, the Texas statute directly conflicts with the federal statute regarding the transfers occurring during the year proceeding the filing of bankruptcy,

October 15,1991 to October 14,1992, and therefore, the Texas statute is preempted regarding these transfers. *Myrick*, 514 U.S. at 287, 115 S.Ct. 1483. Therefore, the only transfers that Gregory–Edwards could attempt to recover if it had an independent claim would be the transfers made between March 2, 1991 and October 15, 1991. *See* Tex. Bus. & Com.Code Ann. § 24.010(a)(2) (Vernon 1987).

**5.** In fact the trial court found in its conclusions of law that Gregory–Edwards's claim survived strictly under the Texas Fraudulent Transfer Act.