## Jefferis's Appeal.    Yearsley's Appeal.

No one can come in under a voluntary assignment for the benefit of creditors, who claims adversely to it.

Such assignments do not give the creditors any title to the property assigned, but only a right to enforce the duty undertaken by the assignees.

APPEALS from the Common Pleas of *Chester county*.*

These were appeals by Way Jefferis, trustee of William Jefferis and Hannah Jefferis, and by Davis Yearsley, from the decree of the court below distributing the assets in the hands of Charles Downing and Abraham Gibbons, assignees of James Yearsley, in trust for the benefit of creditors.

By the will of Abraham Jefferis, proved the 9th December 1822, Way Jefferis and James Yearsley were appointed trustees for William Jefferis and Hannah Jefferis, children of the testator, both of whom were of weak and unsound mind. And by the will of Isaac Yearsley, proved on the 5th May 1834, James Davis and James Yearsley were appointed trustees of Davis Yearsley, a son of the testator.

On the 20th March 1843, James Yearsley made an assignment of all his estate to James Davis, and others, in trust, first, to pay such debts as he might be liable to in a fiduciary capacity, as trustee, guardian, &c., amounting to about $9000; and then, to pay all his other creditors, *pro rata*, without preference. The assignees accepted the trust, and filed an inventory amounting to $55,810.59.

The assignees sold a portion of the real estate; and on the 8th December 1845, believing James Yearsley to be entirely solvent, with the written consent of all his creditors, except his *cestuis que trust*, they re-assigned to him the trust estate.

After this re-assignment, James Yearsley carried on business, treating the property as his own, until the 30th December 1850, when he executed a second assignment of all his estate to Charles Downing and Abraham Gibbons, in trust for the equal benefit of all his creditors.

A large portion of the real estate assigned in 1843, passed by the last assignment to Downing and Gibbons; and the proceeds of it in the hands of the last assignees, were amply sufficient to pay all the debts claiming a preference by virtue of the first assignment. All the creditors interested under the assignment of 1843, were satisfied, with the exception of the *cestuis que trust*, to whom a preference was thereby given.

Before the auditors, Way Jefferis, as trustee for William Jefferis,

* These cases were decided in 1855.

claimed a sum of $626.24, and as trustee of Hannah Jefferis, a sum of $712.42; and Davis Yearsley, a sum of $3340.53; which they claimed should be paid in full, under the trusts contained in the assignment of 1843. The auditor reported against the preference claimed, but awarded them a dividend with the other creditors; and the court below confirmed the auditor's report, and decreed distribution accordingly; whereupon these appeals were taken.

*J. J. Lewis, U. V. Pennypacker,* and *Meredith,* for the appellants.

*P. F. Smith* and *W. Butler,* for the appellees.

The opinion of the court was delivered by

LOWRIE, J.—This account is presented under a voluntary assignment made by James Yearsley in 1850, and on the question of distribution, certain persons appear and show that the proceeds arise partly from property that had been assigned in 1843, for their benefit, and claim that they are entitled under that assignment to follow them here. Is it so? The case of Okie's Appeal, 9 *W. & S.* 156, decides expressly that it cannot be done; because, as claimants under the first assignment, they are adverse to the second assignment, and can be no parties to an account under it. And we may add that, to enforce their interest under the first assignment, their only remedy is, that pointed out by the law of assignments; which is to call the first assignees to account in court.

Such assignments do not give the creditors any title to the land assigned, but only a right to enforce the duty undertaken by the assignees. As in the cases of assignments in insolvency and bankruptcy, they dedicate or sequestrate certain property for the benefit of creditors; and after the act of sequestration, voluntary or compulsory, the government takes charge of and regulates all the subsequent steps of the process, and all the duties of the assignees, for the benefit of the debtor and his creditors. Though a voluntary assignment is not produced by judicial process, yet it is itself the first step in such a process, which does not terminate until all the sequestrated property is appropriated according to law.

To this process, the assignor, assignees, and creditors are the parties and the only parties; and none of them have any rights except what are connected with and result from it. Those whose claims assume a hostile attitude to the assignment, which is the ground of the process, cannot claim any interest under it, or insist on standing as parties to it. Approaching the fortress with a hostile intent, they should expect to find the gates barred. As creditors they can claim under the second assignment, but their

[Jefferis's Appeal.]

rights must be measured by its provisions, and not by those of the first assignment. Claiming under one assignment, they cannot hold the assignees to duties prescribed by another and a hostile one.

And it would be unjust to admit the claims of the appellants in this case, on the ground of the first assignment; for when that assignment was made by James Yearsley, he was trustee of the very interests now claiming to be heard; when the assigned estate was re-assigned to him in 1845, he had paid all the debts except those of which he was still trustee; he was perfectly solvent, and was entitled to represent and control these interests as he pleased, as trustee; and he did not receive back his property as a trustee for these creditors, but in his own right, remaining liable for the interest intrusted to him, just as he was before the first assignment.

Decree affirmed, at the costs of the appellants.