MECHANICS' AND FARMERS' BANK OF ALBANY: APPEAL FROM PROBATE.

The 19th section of the insolvent act of 1853, provides that "if any creditor shall present a claim against any estate in settlement under the provisions of this act, who has any security for such claim by mortgage, attachment, or other lien upon any property belonging to the estate, it shall be the duty of the commissioners on such estate to inquire into the cash value of such security and report the same to the court; and unless such creditor shall elect to relinquish such security he shall be entitled to a dividend only upon the excess of such claim above the value of such security." Held, that the provisions of this section did not apply to security upon real estate situated out of the state, such real estate not being a part of the assigned estate.

A creditor residing in the state of New York, who had security for his claim by a mortgage of real estate in that state, presented his claim against an assigned estate in settlement under the provisions of the insolvent act of 1853. While the claim was pending before the commissioners on the estate, the legislature, in 1861, passed an act enacting that the provisions of the 19th section of the insolvent act "be, and the same are hereby extended to any and all securities by mortgage or otherwise, held by any creditor for any claim presented by him against any estate in settlement under the provisions of said act." Held, 1. That this act was applicable to estates in settlement at the time it was passed, and was not to be construed as applying solely to estates afterwards assigned. 2. That the act was not unconstitutional or invalid as impairing a vested right of the creditor to a full dividend in the estate assigned.

In 1862, and while the estate was still in settlement, the legislature passed an act in two sections, the first of which was in the words of the act of 1861, with the following provision added:—"Provided that this act shall not be applied to or affect any estate now in progress of settlement;" and the second of which repealed the act of 1861. Held, that the above provision of the first section applied to the whole act and not to the first section merely; and that consequently the repeal of the act of 1861, by the second section, did not affect estates then in the course of settlement.

As the act of 1861 merely directed as to future proceedings in the settlement of assigned estates, it was not to be regarded as retrospective, in the ordinary sense of that term, although operating upon estates already assigned and in the course of settlement.

The right of a person to the remedies which the law furnishes for the enforcement of his rights, is not a vested right, which may not be impaired by legislation. Such remedies may be changed or taken away, although the rights of parties may suffer detriment from the change.

A creditor of an assigning debtor acquires no vested right in the estate by means of the assignment. The trustee is the agent of the law, and all the proceedings in the future settlement of the estate are subject to the will of the legislature.

APPEAL from a decree of the probate court of the district of Farmington, ordering the payment of a dividend on the assigned estate of John T. Norton of Farmington.

The appellants, who were a banking corporation located at Albany in the state of New York, presented to the commissioners on the estate a large claim for which they held a mortgage on real estate in Albany.  The assignment was made in 1860.  The insolvent act of 1853, under which it was made and under which the estate was in settlement, contained the following provision :—

" Sec. 19.  If any creditor shall present a claim against any estate in settlement under the provisions of this act, who has any security for such claim, by any mortgage, pledge, attachment, or other lien upon any property belonging to said estate, it shall be the duty of the commissioners on such estate to inquire into the cash value of such security, and report the same to the court ; and unless such creditor shall elect to relinquish such security, he shall be entitled to a dividend from such estate only upon the excess of such claim above the value of such security."

The appellants claimed, before the commissioners on the estate, that the security which they held was not to be inquired into and the value of the same reported to the probate court, because the property so held by them as security was real estate not situated in this state, and so was not a part of the assigned estate.  While the claim was pending before the commissioners, and before they had made their report, the legislature, in 1861, passed the following act :—

" That the provisions of the 19th section of an act entitled ' an act for the relief of insolvent debtors and for the more equal distribution of their effects among their creditors,' be, and the same are hereby extended to any and all securities by mortgage or otherwise, held by any creditor for any claim presented by him against any estate in settlement under the provisions of said act."

After the passage of this act the case was further heard before the commissioners, who, against the objection of the respondents, inquired into the cash value of the security held

by the appellants, and reported the same to the probate court in connection with the allowance of their claim. The probate court accepted the report, and in ordering the payment of a dividend on the estate, the appellants having declined to relinquish the security, allowed only the balance of their claim above the value of the security. From this decree the present appeal to the superior court was taken.

After the appeal and before the hearing of the same in the superior court, the legislature, at its May session in the year 1862, passed the following act :—

"Sec. 1. That the provisions of the 19th section of an act entitled 'an act for the relief of insolvent debtors, and for the more equal distribution of their effects among their creditors' be, and the same are hereby extended to any and all the securities by mortgage or other security upon the property of the debtor, wherever situated, held by any creditor for any claim presented by him against any estate in settlement under the provisions of said act; provided that this act shall not be applied to or affect any estate now in progress of settlement.

"Sec. 2. An act entitled 'an act amending an act for the relief of insolvent debtors and for the more equal distribution of their effects among their creditors,' approved July 3, 1861, is hereby repealed."

Upon these facts the case was reserved by the superior court for the advice of this court.

*T. C. Perkins* and *C. E. Perkins*, for the appellants.

1. Under the act of 1853, as it stood before the amendment of 1861, it is very clear that the appellants were not liable to a deduction from their claim on account of the security which they held. The mortgage being upon real estate situated in the state of New York, it was not " security upon any property belonging to said estate," and if it had been relinquished would not have gone to the trustee.

2. The act of 1861, we contend, does not apply to the case ; and if it does, is unconstitutional so far as it has that application. 1st. It does not apply to the case because it is not retrospective. The expression " estates in settlement " does not

necessarily mean estates *then* in settlement, but may equally mean estates thereafter in settlement. If it will bear both constructions, then, upon well settled principles, it should receive that construction which will make it prospective merely. Courts will never construe a statute as retrospective unless the language imperatively requires it. *Plumb* v. *Sawyer*, 21 Conn., 351; *Butler* v. *Palmer*, 1 Hill, 324; Sedgw. on Const. & Stat. Law, 194 to 202. 2d. If the act is applicable to this estate, then it is invalid as impairing the vested rights of the appellants. The assignment vested in them, under the law as it then stood, a right to a full dividend from the estate. The interest was as much vested and as positive as that acquired by a mortgagee under a mortgage. Any legislation reducing this interest impairs the obligation of a contract and is unconstitutional. *Trustees of Bishops' Fund* v. *Rider*, 13 Conn., 87; *Bronson* v. *Kinzie*, 1 How., 311; *McCracken* v. *Haywood*, 2 id., 608; *Perin* v. *Carey*, 24 id., 465; *Quackenbush* v. *Banks*, 1 Denio, 128; *Robinson* v. *Magee*, 9 Cal., 81; *Damman* v. *Commissioners of School Lands*, 4 Wis., 414.

3. But the law of 1861 has been repealed, and is no longer in force. Acts of 1862, ch. 54, p. 48. By this repeal the condition of the estate becomes the same as if the act had never been passed. *State* v. *Daley*, 29 Conn., 272; *Kay* v. *Goodwin*, 6 Bing., 576. The provision that the act should not apply to estates then in settlement, manifestly means only that the provisions of the first section should not so apply. It was never intended that the repealing clause in the second section should be affected by that provision. The whole object of the act was to repeal the former act because it contained no such limitation, and to substitute for it a new act with the limitation. ’

*McFarland*, for the appellees, contended that the act of 1861 was to be construed as applying to estates in settlement at the time of its passage, and would bear no other construction; that the act was one which the legislature had full power to enact, as it did not impair vested rights, but related merely to proceedings in the settlement of estates, over which the legisla-

ture had entire control, and as to which the appellants had no vested rights; (citing on this point *Curtis* v. *Barnum*, 25 Conn., 370; *Hine* v. *Belden*, 27 id., 391; *Commonwealth* v. *Cochituate Bank*, 3 Allen, 42; *Sturges* v. *Crowninshield*, 4 Wheat., 134;) and that the act of 1862 did not apply to the case by reason of the provision of the first section that the act should not affect estates then in the course of settlement, which provision applied to all the act, and consequently to the repealing section, and not to the first section alone.

DUTTON, J. John T. Norton of Farmington assigned his property for the benefit of his creditors. Commissioners were appointed, and the appellants presented a claim to them which was secured by a mortgage of real estate situated in Albany in the state of New York. As the law stood when the presentment was made, the appellants were entitled to have their whole claim allowed without any deduction for the security which they held in the state of New York, the property mortgaged not being a part of the assigned estate, and so not coming within the provisions of the 19th section of the insolvent act. While the allowance of the claim was pending before the commissioners, the legislature of this state passed an act extending the provisions of this section " to any and all securities by mortgage or otherwise, held by any creditor for any claim presented by him against any estate in settlement under the provisions of said act." Acts of 1861, chap. 67, p. 99. The commissioners then allowed the claim of the appellants, but reported the value of the security held by them, and thereupon the court of probate ordered a dividend on only the balance of their claim. This appeal was taken from this decree of the court of probate. During its pendency the act of 1862 was passed, making the provisions of the statute of 1861 more explicit, but excepting from its operation any estate then in progress of settlement, and then by a separate section repealing the act of 1861. Acts of 1862, ch. 54, p. 48.

It is now insisted by the appellants,

1. That the statute of 1861 does not apply to their claim.

2. That if it does apply, its operation would be to deprive them of vested rights, and that it is therefore unconstitutional.

3. That if it did, when enacted, apply to their claim, it has since been repealed, and they have been restored to their original rights.

As to the first claim, we think it clear that the commissioners had the right to estimate the value of the appellants' mortgage, and that the judge of probate did right, supposing the law to be constitutional, in limiting the dividend to the balance. The appellants insist that this would be giving to the act a retrospective operation, which is contrary to the general policy of the law.

The question is one merely of construction. What is the fair import of the language of the statute? It is urged that its meaning is the same as if it had read, " any estate that shall hereafter be in settlement." What propriety is there in interpolating these words? The expression " estate in settlement " is not of itself ambiguous. The terms are broad enough to include estates then in settlement, as well as future ones. The presumption is that if the legislature had intended to limit the operation of these words, it would have done it by explicit language. Further, the apparent object of the law of 1861 was to supply an omission in the law of 1853, and assuming for the purposes of this question that there was no constitutional objection in the way, why should not the law be made applicable to estates then in settlement? The evil existed in those cases as much as it would in subsequent ones.

The appellants insist that this case comes within the principle laid down in the case of *Plumb* v. *Sawyer*, 21 Conn., 351. That case arose under a statute that provided that under certain circumstances real estate conveyed to a feme covert, should be held by her to her sole and separate use. The question was, whether this statute should apply to real estate which had been conveyed before the statute was passed. The court take the ground, that the statute ought not to be regarded as applying to conveyances already made, giving a new effect to such conveyances. The legislature could not have intended to interfere with the rights of parties where those rights had become already vested, and as the

expression " conveyed " may apply only to future instruments, it ought to apply to them alone. In that case it was immaterial whether the law should be considered as applicable to past conveyances or not, for it could not be contended that the legislature could, by a mere statute, deprive a husband of a life estate in his wife's land which had already accrued to him. There are however considerations arising from that statute itself, and from another passed at the same session, which lead to the conclusion that the former was not intended to apply to past conveyances. The language used is that the conveyances referred to " shall be held "—relating to future enjoyment and impliedly to future instruments. The court in giving their opinion in *Plumb* v. *Sawyer*, allude to the other statute, which regarded married women, in which the legislature use the terms " has been or shall be," showing that they had in mind the distinction of past and future, and the inference is, that in the statute which they were construing, the future only was intended.

There is an obvious distinction between giving a new effect to already executed instruments, and regulating the future proceedings of courts. The main ground of objection in the present case is, that it is giving a retrospective operation to the statute. But this is an unfounded assumption. The statute does not, if applicable to estates in settlement at the time of its passage, affect any past proceedings. It merely directs what shall be thereafter done.

The only really important question in the case is yet to be considered. The construction of the statute, whether prospective or retrospective, is of little importance, provided its operation would be to impair vested rights. If the statute was clearly retrospective, and if the appellants have such vested rights as they claim, which would be unjustly affected, we should not hesitate to declare it unconstitutional. The appellants claim that by the deed of assignment they have a security to the extent of a dividend on the whole of their claim, as fully as if the debtor had conveyed a piece of property to a third person to secure his indebtedness to them. This claim is founded on a total misapprehension of an assignment for the

benefit of creditors under the laws of this state. The object of the statute on the subject is to place all property so assigned in the custody of the law, to be disposed of according to law. Even the assignee in the conveyance has no vested right. He is the mere agent of the law. He is bound to comply with the orders of the judge of probate. He is liable to be removed, and then the title, without any act of his, passes to the trustee who is appointed in his place. If the debtor does not make an assignment voluntarily, he can, if actually insolvent, be compelled to go into insolvency. · The property is then by act of law vested in a trustee. His interests, rights and duties are the same as if he had received an assignment and proceeded under it. This shows beyond a question that such a trustee is the mere agent of the law. The debtor has no agency in the subsequent proceedings. Now it would hardly be claimed that any particular creditor has a vested interest in property so conveyed by law to a trustee. But it would be equally unreasonable to claim that there is any difference in a creditor's rights, between the case of a debtor voluntarily making an assignment and that of his being driven into insolvency by his creditors. The law in both cases takes care of the interests of creditors, without requiring any thing to be done on their part except presenting and proving their claims. The statutes on the subject are strictly remedial, providing for the appropriation of the debtor's property, on principles of equality and justice, among all his creditors. Where the law, out of mere regard to the rights of creditors and for the purpose of doing them equal justice, volunteers to aid them in the collection of their debts, it would be most unreasonable to allow some of them to insist upon applying strict technical rules in their favor to the prejudice of others. The nature of the case does not admit of any such application. These laws are like all laws of a general character, liable to be changed from time to time to accomplish the object in view and subserve more fully the ends of justice.

The distinction between laws affecting vested rights and those varying remedies for enforcing such rights, is as well settled as any thing in the law. Remedial laws must necessarily

be subject to the action of the legislature, even where they apply to antecedent rights, or great injustice would often be done. Otherwise the effect of hasty or injudicious legislation would, though highly injurious to the community, be irremediable. The present case furnishes an apt illustration. Suppose that this debtor, previous to 1853, when the insolvent act was passed, had owed a large number of his townsmen for labor and articles of food, to whom he had given no security, although in the possession of abundant property, in view of which they had given him credit; and suppose he had also at the same time owed this debt to the appellants, securing them with property in the state of New York, which they at the time regarded as sufficient to protect them from loss. Before the act of 1853 was passed he could, although insolvent, have secured his home creditors with his property here, doing equal justice to them and the appellants. Then the legislature interferes, and prescribes what alone he can do, but inconsiderately gives an undue advantage to the New York creditor. The legislature, from the best of motives, has undertaken to provide a new remedy for the evil of withdrawing property from the reach of creditors and an unequal distribution of it. It has by an oversight caused the injustice. Can it not correct the error and rectify the evil ? Can it not amend such a remedial statute, so as to accomplish the beneficent object which it had in view ? The appellants proceed upon the ground that, as soon as the assignment was made, they had a right to such a portion of the assets as the settlement of the estate under the law as it then stood would give them. Let us see to what consequences this would lead. Any material change of the law, such as increasing the fees of the judge of probate, or of the commissioners, or allowing a greater sum for the support of the family, or a greater percentage to the debtor, or extending the time for exhibiting claims, would or might diminish this portion. Every change in the law would on this supposition make a distinction in the settlement of estates commenced before and after the passage of the law making such change. Such a principle applied to remedial laws would be intolerable. Every person therefore who

makes a contract, or takes a conveyance, or becomes interested in one, is presumed to give his assent to such further remedial laws affecting his interests as the legislature may think proper to pass:

If there could be a serious doubt in the mind of any one that the statute in question is remedial, it must be removed by the consideration that it is repealable, and if repealed the creditor would be left without any means of enforcing his supposed vested rights. Of what use would it be to him, without any commissioners to allow his claim, or any authority in the judge of probate to declare a dividend, or to order it to be paid ?

It is especially just that the appellants should be governed by this rule. They are inhabitants of the state of New York, and as such have an advantage as to real estate situated there over the creditors here. The legislature of this state can not regulate the disposition of that property so as to give the home creditors an opportunity to share in it. When the creditors in that state therefore come into this to avail themselves of our laws, it is manifestly just that they should consent to be put on an equality with the citizens of this state. In the settlement of the estate of deceased persons, the courts of a state, not the place of domicil of the deceased, will not allow his assets found within the state to be withdrawn, to the prejudice of his creditors in that state. The creditors in the place of his domicil have at least an equal right to be protected against a priority in favor of foreign creditors.

The case of *Hine* v. *Belden*, 27 Conn., 384, furnishes a strong precedent in favor of the constitutionality of remedial statutes, and also as to applying them to proceedings pending at the time of the passage of the law. In that case the question was whether a statute, providing that all proceedings brought to obtain the forfeiture of liquors, under the act of 1854 for the suppression of intemperance, " shall be held to be proceedings *in rem*, and shall be proceeded with as civil and not as criminal proceedings," should affect a case previously brought and then pending. The justice before whom the suit was brought was absent on the return day. If it was a criminal suit no further proceedings could have been had. If it

was a civil suit, the justice could within twenty days notify the parties and proceed as by adjournment. (Rev. Stat., tit. 5, § 73.) The statute was passed before the time for giving notice, if it was a civil suit, had passed. The justice gave the notice and proceeded to render judgment in the case. This court held that a case then pending was a case " brought," and that the statute made it a civil case, whether it was one before or not, and that proceedings thereafter had as in a civil case were valid. In the case of *Taylor* v. *Keeler*, this court held recently, that the statute of 1859, regarding costs, applied to cases then pending. 30 Conn., 324. In all such cases a party would have certain privileges by virtue of an existing statute, which he would regard as valuable, and which he might lose by a repeal or alteration of the statute. These however are never regarded as vested rights. No jurist would deny that the law forbidding imprisonment for debt, discharged at once from gaol all debtors confined on execution, although the creditor would thereby be deprived, not only of that means of forcing the debtor to pay the debt, but also of the prospect of obtaining the cost which he had incurred in the attempt. So a new statute of limitations may be made to apply to claims which would, by the law then existing, have a longer or shorter time to run. Even legal rights, when founded in the omission or mistake of officers of the law, as in the case of quieting acts, are subject to the action of the legislature. The principle which lies at the foundation of these cases, applies with peculiar force to cases where, as in the present one, the right claimed was a mere boon, which the party had no right to demand, and for which he parted with no valuable consideration.

The appellants claim still further, that if the law of 1861 was applicable to this estate, the law of 1862 restored their claim to its former condition.

We are satisfied, however, that this act does not affect this estate, as it was then in progress of settlement, and there is an express proviso that the act shall not be applied to or affect such estates. This provision covers the second section, which repeals the law of 1861, as well as the first. The object of the

whole law manifestly is to enlarge, and not contract, the provisions of the law of 1861.

We therefore advise the superior court that there is no error in the decree of the probate court appealed from, and that it should be affirmed.

In this opinion the other judges concurred.