NATIONAL EXCH. BANK OF BALTIMORE *v.* PETERS *et al.*

*(Circuit Court, E. D. Virginia.* October 25, 1890.)

NATIONAL BANKS—LIABILITY OF DIRECTORS—EQUITY JURISDICTION.
    Rev. St. U. S. §§ 5234, 5239, prescribing the method of enforcing the liability of the directors of national banks for violation of the banking law, are exclusive of other remedies, and a creditor of an insolvent bank, for which a receiver has been appointed, cannot sue its directors for the purpose of making them personally liable for the mismanagement of the bank.

In Equity.   On demurrer to bill.
*G. M. Dillord* and *John Neely,* for complainant.
*Alfred P. Thom, Sharp & Hughes,* and *John B. Jenkins,* for defendants.

HUGHES, J.   The complainant is one of the creditors of the late and now insolvent Exchange National Bank of Norfolk.   The bill is brought against the late directors of the insolvent bank, one of whom was president and another cashier, and against the present receiver of that bank. The complainant bank transacted with the Norfolk bank the business of collections, each for the other.   In the fortnight preceding the closing of the doors of the insolvent institution, which occurred on the 2d of April, 1885, a balance of $14,883 was in favor of the complainant against the Norfolk bank, less dividends, not exceeding 60 per cent., that have been paid by the receiver.   The bill, after setting out this claim, charges that the defendant directors—

"Did not give that care, supervision, and attention to the affairs of the bank which the duties of their office and the nature of the trust reposed in them required; but, on the contrary, neglected the same, and intrusted the entire business concerns of the bank to [its president and cashier,] who recklessly and improvidently loaned the money and securities of the bank to various embarrassed and insolvent firms and individuals, without taking proper and sufficient securities for the protection of the creditors and others confiding in the directors' management of the bank, and recklessly converted the money of the bank to their use; the said president and cashier carrying a joint account at said bank, which at the time of its failure was overdrawn in the enormous sum of over sixty thousand dollars."

The bill proceeds to set out a detailed series of "facts and circumstances," similar to the statement as to the president and cashier, relating to these officers and two other of the defendant's directors, with a view of showing more specifically what it characterizes as the "gross negligence and mismanagement of the bank by its directors and officers." It charges that "it was the custom of the directors to meet only to organize and to declare dividends," and that the misappropriation of the funds, and wrongful acts which it describes, occurred during the management of the affairs of the bank by the directors, who are defendants in this suit.   The bill prays for a discovery on oath from each of the defendants of all facts in their knowledge, and which they may have heard and believe, touching the mismanagement complained of, and that they shall severally answer, generally and specifically, the charges which

it sets out. It prays that the matters charged may be referred to a com-. missioner of the court, to ascertain the truth of the statements and charges which it makes, and the liability of the defendants severally to make good the loss complained of, and to ascertain and report all other matters pertinent to this case which complainant has not had the means of obtaining. There is a prayer for general relief.

The epitome thus given of the bill shows sufficiently the character of this suit, and suggests on its face the grounds of demurrer on which the case comes before the court; and the question presented is whether a creditor of an insolvent national bank of the United States can sue its directors for the purpose of fixing upon them a personal liability for the mismanagement of such an institution. It is not a question whether these directors are liable or not, or may be sued or not, and subjected to the liability, but only whether a creditor of a national bank can sue its directors for mismanagement and negligence of his own mere volition. It is elementary law that, if Jones injures Smith's person, and Smith. owes Brown a debt, Brown cannot sue Jones for damages as a means of making good his debt against Smith. So, if Jones buys a horse from Smith, Brown, Smith's creditor, cannot sue Jones, Smith's debtor, for the purchase money. There is no privity between Jones and Brown, either of contract or tort, on which the action can rest. The universal rule, as old as the law itself, is that, unless there be privity between plaintiff and defendant, no action will lie; and in this respect equity follows the law, although equity, when once having cognizance of a cause between principal parties in privity, will then, when necessary to effect its policy of doing complete justice, bring other persons incidentally connected with the subject of controversy before it, whether these latter are in privity or not. The rule has no relaxation except where statute law intervenes to relieve a hardship, which, in exceptional cases, would result from its enforcement, and except where equity, after a wrongful refusal to sue by the proper plaintiff, then authorizes suit under its own direction. A case in which the statute law intervened was that of *Trustees* v. *Bossieux*, 4 Hughes, (U. S.) 387, 3 Fed. Rep. 881, cited on brief for complainant. The case is known to the profession of Virginia as "*The Dollar Savings Bank Case.*" That suit was brought by trustees in bankruptcy against the directors of a disgracefully insolvent bank, by trustees whom the national bankruptcy act expressly authorized and directed to sue for assets of the bankrupt. That suit went to a decree from which there was no appeal, and the directors paid into the assets in bankruptcy the amount settled upon as proper in the case.

If the receiver of the late Exchange National Bank of Norfolk, instead of a single creditor, had brought the suit now under consideration, the question of demurrer would have been similar in its main feature, but not in all its features, to that which was decided on demurrer in the *Dollar Savings Bank Case;* because, under the national banking act, the receiver of an insolvent national bank is authorized and required, under the direction of the comptroller of the currency, to take possession of the assets of every description of the insolvent bank, and to collect all debts,

dues, and claims belonging to it. Section 5234. In respect to directors of an insolvent national bank, the national banking act provides that, if they knowingly violate, or knowingly permit any of its officers, agents, or servants to violate, any provisions of law enacted to secure a proper administration of the affairs of such banks, its charter may be forfeited, on a decree by a proper court of the United States, in a suit brought by the comptroller of the currency in his own name for that purpose. Section 5239. It further provides that every director who shall have participated in or assented to the violation shall be liable in his personal and individual capacity for all damages which the association or its shareholders shall have sustained in consequence of such violation. Thus the statute law makes directors of a national bank liable in damages for violations of their duty, or negligence or malfeasance as directors, and prescribes how they shall be subjected to liability. Being liable in damages, they are amenable to suit for damages in a jury proceeding, and not, I infer, to suit in any other form, whether at law or in equity. But, even if they were amenable to liability in a proceeding not sounding in damages, then, the damages recoverable being an asset of the bank, the statute law empowers and requires the receiver of the injured bank, under the direction of the comptroller, and him alone, to sue for the claim. Except the receiver, the statute law nowhere authorizes suit to be brought by any person not in privity against directors of national banks. The bill of complaint under consideration has therefore no sanction in respect to its party plaintiff from the statute law of the land. Does it present a case in which equity, in the exercise of a high prerogative to which it feels at liberty sometimes to resort, will relieve against the rule of privity, and entertain this suit, though brought by a plaintiff otherwise incompetent to sue? Certainly the bill contains nothing on its face to require or to justify such a recourse. Exceptional authority to sue is given only in the rare cases in which those legally competent to sue wrongfully refuse to do so. When such a case is presented, equity will sometimes authorize and direct suit to be brought by some other plaintiff whom it may approve.

As before said, whatever is claimed in the suit at bar would be an asset in the hands of the receiver if recovered, and the statute law imposes upon him the duty of suing for it, under the comptroller's direction. But this bill contains no allegation either that complainant called upon the comptroller to direct the receiver to sue, and he refused, or that the receiver himself was called upon and refused. Containing no such allegation, the bill makes no case for a suit by a person other than the receiver. Nor would it follow, even if such an application had been made and refused, and the fact had been duly alleged in the bill, that this suit could be maintained; for in cases where directors of national banks have violated, or negligently permitted the violation of, the laws regulating those banks, the statute law seems to require that the question of violation shall be judicially determined in a proper court of the United States, in a suit instituted in his own name by the comptroller for that specific purpose, before the liability can attach to the directors; and

therefore it would seem that directors cannot be pursued individually for such violation until after such an adjudication thus obtained. So that, if the receiver and the comptroller, though called upon to sue the defendants in this suit, had refused to do so, even the allegation of such application and refusal would have been insufficient ground of authority for bringing this suit.

I am of opinion that the provisions of the national banking act enter as part into the contracts of creditors with the national banks, and that those provisions which define the liability of directors, and prescribe the proceedings to be taken against them, when guilty of violations of the act, are exclusive of other liability and other proceedings; and that it is not within the prerogative of equity to authorize a disregard of the provisions of the national banking act, defining such liability and prescribing such proceedings. In view of sections 5234 and 5239 of the act, I am of opinion, therefore, that this court cannot entertain the suit of a creditor against the directors of the late Exchange National Bank.

It is useless to maintain that the bill under consideration is a general creditors' bill, and as such may be entertained, in accordance with the usual practice of equity, in creditors' suits. A creditors' bill is one brought by creditors of an insolvent debtor against the debtor and such person as may have custody of his estate, having for its object an equitable distribution of his effects. It is a suit between creditors and their debtor; between parties standing in the relation to each other of direct and complete privity. No statutory authorization or extraordinary stretch of the equity prerogative is required to validate such a proceeding. In this respect, a creditors' bill is the antipodes of the one at bar. That rests on full privity between plaintiffs and defendant; this has no shadow of privity to stand upon. But even if this were a bill resting on privity, it would be a creditors' bill only in form. It was filed on the 31st March, 1890; whereas, on the 2d April, three days afterwards, the fifth anniversary of the closing of the doors of the Exchange National Bank of Norfolk recurred, when the claims of all creditors who could come in and participate in the benefits of the bill became barred by limitation. No petition was filed in the case by any creditor before the 2d April, 1890, and of course none have been filed since. So that, in fact, the bill is that of one creditor alone of an insolvent national bank, brought gratuitously, without previous application to the comptroller and receiver, and a refusal on their part to sue.

The demurrer must be sustained, and the bill must be dismissed.