BOYD et al. v. SCHNEIDER et al.

(Circuit Court, N. D. Illinois, N. D. July 1, 1903.)

No. 26,198.

1. NATIONAL BANKS—SUIT AGAINST DIRECTORS—WHO MAY MAINTAIN.
The right to maintain a suit against the directors of an insolvent national bank under Rev. St. § 5239 [U. S. Comp. St. 1901, p. 3515], to recover for general distribution, as assets of the bank, sums alleged to have

¶ 1. Personal liability of bank directors, see notes to Robinson v. Hull, 12 C. C. A. 680; Warner v. Penoyer, 33 C. C. A. 230.
See Banks and Banking, vol. 6, Cent. Dig. §§ 950, 953, 1093.

been lost to it through the negligence or mismanagement of its affairs by defendants, is one vested in the receiver for the benefit of both creditors and stockholders; and conceding that such suit may be maintained without a previous adjudication forfeiting the bank's charter under said section, and even that it may be brought by others than the receiver, acting under direction of the Comptroller of the Currency (which is doubtful), it cannot in any case be maintained by creditors alone, who have no interest in the fund sought to be recovered, beyond the amount of their claims, and no authority to represent the stockholders to whom the remaining interest belongs.

In Equity. On demurrer to bill.

Runnells & Burry and Pam, Calhoun & Glennon, for complainants. J. A. & H. R. Baldwin, E. Allen Frost, J. B. Leake, Flower, Vroman & Musgrave, Willard & Evans, Wilson, Moore & McIlvaine, and John J. Herrick, for defendants.

KOHLSAAT, District Judge. This cause was brought here by removal from the superior court of Cook county, Ill. The bill was filed by certain creditors of the National Bank of Illinois, an insolvent corporation, to recover from the defendants funds alleged to have been lost through negligence on the part of the directors of the National Bank of Illinois in the management of said bank; asking that the amount of money so lost "may become an asset of said bank, and of the receivership thereof, and be distributed by said receiver according to law." The bill charges that, after exhausting the assets of the bank and the liability of the stockholders, there still will remain a large sum due to the various creditors, including complainants. To meet this deficiency, complainants pray that an account be taken of what has been lost of the assets of the bank through the negligence, carelessness, and misconduct of the directors, and each of them; that it may be ascertained for what amount each of them should be held responsible in the premises; and that, when ascertained, each of said directors be decreed to pay the amount so found to be due from him to E. A. Potter, receiver of said bank, to be by him distributed in accordance with law. The bill further charges that complainants have applied to the receiver to institute the suit, and that he has refused. The bill is somewhat uncertain upon the point as to whether it is filed to create a general fund, or a fund for certain creditors, in that it charges the directors with giving out and pretending to the complainants and others that they were properly performing their duties, and that the affairs of the bank were in good condition; but, all its allegations and the prayer thereof considered, it must be deemed a bill to recover from the directors a bank asset, and to create a fund, and the allegations of the bill which seem to indicate a contrary purpose should be treated as surplusage. The defendants have filed general and special demurrers to the bill, claiming want of equity, and, in substance, that the bill is multifarious; that the right of action, if any, is in the receiver, and that complainants, being simple creditors, have no standing in such a case; that the bill is bad for want of certainty, and particularly that complainants fail to show interest in or injury by the acts complained of; that the right of action does not survive against executors or administrators

of deceased directors; and that complainants have a complete and adequate remedy at law.

The demurrer must be sustained as to clauses 11, 12, and 14b of the bill, for the reason that said clauses are foreign to the general purport of the bill, and set up a different cause of action.

There are two points made by the demurrers which seem to me to call for consideration, as preliminary to all others raised, since they go to the rights of the complainants to maintain a suit against the defendant directors. The one is as to whether, under the banking act, a suit can be brought by any person other than the receiver, acting under the Comptroller of the Currency. The other is, conceding the right to bring suit without the direction of the Comptroller, whether creditors can maintain a suit like the one at bar against the directors to recover a corporate asset. Section 5239 of the banking act of the United States, tit. 62 [U. S. Comp. St. 1901, p. 3515], provides that:

"If the directors of any national banking association shall knowingly violate or knowingly permit any of the officers, agents or servants of the association to violate any of the provisions of this title, all the rights, privileges and franchises of the association shall be thereby forfeited. Such violation shall, however, be determined and adjudged by a proper Circuit, District or Territorial Court of the United States in a suit brought for that purpose by the Comptroller of the Currency in his own name before the association shall be declared dissolved. And in cases of such violation, every director who participated in or assented to the same shall be held liable in his personal and individual\capacity for all damages which the association, its shareholders or any other person shall have sustained in consequence of such violation."

Considerable difference of opinion has arisen in the courts concerning the construction to be placed upon this section. Judge Shiras, of the Northern District of Iowa, has held in Welles v. Graves (C. C.) 41 Fed. 459, and Gerner v. Thompson et al. (C. C.) 74 Fed. 125, that, before suit can be brought by a receiver against directors to enforce their liability under this act, it must appear that a forfeiture of the charter of the bank has been adjudged in accordance with section 5239. To the same effect is Bank v. Peters (C. C.) 44 Fed. 13. While the case of Hayden v. Thompson et al., 71 Fed. 60, 17 C. C. A. 592, and Stephens v. Overstotz (C. C.) 43 Fed. 771, hold the contrary. Thompson, in his Commentary on Corporations (volume 3, § 4303), speaks of the former construction as unsound. I am inclined to the opinion that such a proceeding by the Comptroller to declare a forfeiture is not a prerequisite to the bringing of a suit under section 5239. In the case of Gerner v. Thompson, just cited, Judge Shiras also holds that directors would be liable, independently of the statute, in an action of deceit. The case of Hayden v. Thompson states that the right to recover dividends wrongly paid out existed long before the act of Congress was passed. This doctrine is further sustained by the following authorities: Richmond v. Irons, 120 U. S. 27, 7 Sup. Ct. 788, 30 L. Ed. 864; Brinckerhoff v. Bostwick, 88 N. Y. 52.

There can be no doubt, from a reading of the bill, that it is based upon the statute. It is a proceeding brought to recover losses of

124 F.—16

the Illinois National Bank growing out of the wrongful acts of defendants, as directors, under section 5239 aforesaid. Can the liability and obligation imposed by the statute, being assets of the bank, be enforced by any one other than the receiver, except as in the act provided?

National banks are the creatures of the national legislature. So far as the act attempts to regulate them, it is supreme. It is not intended that they shall be created only to be launched as independent corporate entities, and thereafter be permitted to engage· in general competitive commercial enterprises, subject only to certain general rules and limitations; but, owing to their relations to the moneyed and other interests which are reserved in and controlled by the government, they are kept under the strict regulation and watchful care of the government, and constitute a class of corporations entirely distinct from all others. It would seem that the powers given by the statute to the Comptroller are in their nature judicial. He can determine when a bank is insolvent. He alone is charged with the duty of enforcing compliance with the provisions of the law, subject only to the regulation of the Secretary of the Treasury. He must, through the receiver, take possession of all the bank's assets, collect and compromise debts, and sell the real estate. He alone can determine the need of and appoint a receiver. The receiver must pay the moneys collected by him to the Treasurer of the United States, subject to the order of the Comptroller. The Comptroller, through his receiver, is required to give notice to creditors to present claims, and make dividends from time to time. He is authorized to determine when it is necessary to institute proceedings against stockholders to enforce their stock liability. All these questions are referred to his judgment and his discretion. The receiver is the proper party to institute all suits. National Ex. Bank v. Peters (C. C.) 44 Fed. 13; Bailey v. Mosher, 63 Fed. 488, 11 C. C. A. 304; Stephens v. Overstotz (C. C.) 43 Fed. 771; Jackson v. U. S., 20 Ct. Cl. 305; Bowes on Nat. Bk. Act, § 425; Kennedy v. Gibson, 8 Wall. 498, 19 L. Ed. 476; Zinn v. Baxter, 65 Ohio St. 341, 62 N. E. 327; Casey v. Galli, 94 U. S. 673, 24 L. Ed. 168; U. S. v. Knox, 102 U. S. 422, 26 L. Ed. 216; Bushnell v. Leland, 164 U. S. 684, 17 Sup. Ct. 209, 41 L. Ed. 598; Glenny v. Langdon, 98 U. S. 20, 25 L. Ed. 43.

In re Manufacturers' National Bank, 5 Biss. 499, Fed. Cas. No. 9,051, was a proceeding instituted to throw the bank into bankruptcy. Judge Blodgett denied the petition upon the ground that the banking act was complete in itself. He held that the act furnished, "through the functions of an important public officer, the Comptroller of the Currency, a very complete and detailed scheme or plan for administering the affairs of an insolvent bank," and intimated that the sense of responsibility of the Comptroller would be sufficient to insure his action in all proper cases. Again he says, as to national banks, they constitute a class of corporations which have, as it seems, a bankrupt law of their own, ingrained into their own constitution, and a part of their organic law, by the same authority which enacted the bankrupt law.

In Bank of Bethel v. Pahquioque Bank, 14 Wall. 383, 20 L. Ed. 840, the court say:

"All alike must await the action of the Comptroller of the Currency, and be content with a just and legal distribution of the proceeds of the assets collected by the receiver and liquidated by the Comptroller according to the act of Congress in such case made and provided."

Defendants claim that the status of such a receiver is analogous to that of an assignee or trustee in bankruptcy, a statutory assignee, or an administrator. In Glenny v. Langdon, 98 U. S. 20, 25 L. Ed. 43, the court, referring to a suit brought by a creditor on refusal of the assignee in bankruptcy to sue, say the assignee is the only party designated by the bankrupt act as the proper claimant of the bankrupt's property and estate. It is further there held that, in framing the act, Congress intended to provide instrumentalities for its complete execution. The right of the creditor in such case to bring suit was denied. In Plow Co. v. Bank, 59 Kan. 38, 51 Pac. 892, the court denied the petition of a creditor to be allowed to bring suit upon the refusal of the assignee to sue. Indeed, it is almost axiomatic, and scarcely requires citation of authorities to support the proposition, that in case of bankruptcy, statutory assignments, administrators, executors, and similar officers, no one can sue except the party occupying the official position. Brown v. Folsom, 62 N. H. 527 (an assignee); Mechanics' & Farmers' Bank, 31 Conn. 63 (an assignee); Jefferis' Appeal, 33 Pa. 39 (an assignee); Glenny v. Langdon, 98 U. S. 20, 25 L. Ed. 43.

In Platt, Receiver, v. Beach, 2 Ben. 303, Fed. Cas. No. 11,215, the court holds a national bank receiver to be an officer of the government which appoints him.

In Price, Receiver, v. Abbott (C. C.) 17 Fed. 506, Justice Gray said:

"By the statutes of the United States, the Secretary of the Treasury is the head of the Department of the Treasury, and the Comptroller is the chief officer of a bureau in that department. * * * Being appointed, pursuant to an act of Congress, to execute duties prescribed by that act, he is, in the execution of those duties, an agent and officer of the United States."

In Jackson v. U. S., 20 Ct. Cl. 305, Justice Davis says the intent of the statute is to throw the entire control of insolvent national banks into the hands of the Comptroller, to centralize power and responsibility, for the purpose of facilitating winding up the affairs of the association. Such, also, is the holding in Bailey v. Mosher, 63 Fed. 488, 11 C. C. A. 304.

It is urged that the receiver, being appointed by the Comptroller, and not by a court, does not come within the rule above stated, and that to hold otherwise would be to invest the Comptroller with judicial powers. But does it require any greater judicial power on the part of the Comptroller to exercise complete control over his receiver than is involved in the appointment of a receiver? Has not the act clothed the Comptroller with powers which have always been deemed judicial? The power to appoint a receiver carries with it the power to remove him. Kennedy v. Gibson, 8 Wall. 498, 19 L. Ed. 476. Would a court allow any person to bring a suit which

should be brought by its receiver? If the receiver failed to protect the assets of the estate committed to his care, he would be personally liable. Suppose a court should, upon investigation, determine that no cause of action existed, and refuse to permit its receiver to sue; could any person feeling aggrieved bring suit in his own name? If, on the other hand, a receiver refused to sue, the court might remove him, or, in a proper case, allow the party interested to sue in his name on giving proper indemnity. Are not the Comptroller and his receiver in a like position? The identical question here involved does not appear to have been adjudicated. It is true that federal courts have seemingly entertained suits brought by stockholders against directors to recover for negligent management of a national bank's affairs, as in Ex parte Chetwood, 165 U. S. 443, 17 Sup. Ct. 385, 41 L. Ed. 782, and in many other cases, but in no case was the point raised that the suit should be brought by the receiver. The case last cited was brought in the state court, and went up on writ of error. It was based upon the common-law liability of the directors. Other cases turn upon facts different from those of the case at bar.

It would seem that the rights, duties, and powers of the receiver of a national bank could hardly be arrived at by analogy to those of any other receiver, but must be looked for in the act. If these creditors can maintain their suit, then others might institute proceedings to recover some other asset, and the liquidation proceedings might be unconscionably prolonged. Have the complainants not had the benefit of the statute, so far as the remedy here sought is concerned, when they have applied to the Comptroller, and he, on investigation, has decided that the suit should not be instituted? For these reasons, I should be inclined to hold that complainants cannot maintain their action herein, in the manner in which it has been instituted, but do not deem it necessary to dispose of the matter on that ground alone. These complainants seek to recover from the defendants the amounts lost through the defendants' wrongdoing—not simply the amount due the creditors, but the whole amount wrongfully dissipated. Damages sustained by the creditors alone would not belong to the receiver. Thompson on Corporations, § 4304. This proceeding must, then, be in the interest of the stockholders, as well as of depositors. The suit is by the creditors, as a class, to assert a right which, it is admitted, vested in the receiver, who could not bring suit for the creditors alone. The stockholders are not joined. They constitute another class. Complainants have no interest in the fund sought to be thus recovered, above the amount of their own claims. No recovery could be had beyond the amounts due the class bringing the suit. Complainants thus place themselves in the attitude of attempting to sue for two classes. The position of a stockholder would be different. He would be interested in the whole fund. Lord Cottenham said in Mozley v. Alston, 1 Phil. 790–798 et seq., that the relief which is prayed must be one in which the parties whom the plaintiff proposes to represent all have an interest identical with his own. 1 Daniells, Ch., side pages 240 and 241, and other cases cited. There are, however, many authorities which go to the extent of holding

that, in cases similar to the case at bar, creditors cannot maintain an action against directors for the creation of a fund. Landis v. Sea Isle Co., 1 Am. & Eng. Corp. Cases, 208; s. c., on Appeal, 53 N. J. Eq. 654, 33 Atl. 964; Deaderick v. Bank, 100 Tenn. 457, 45 S. W. 786; Bank v. Hill, 148 Mo. 380, 49 S. W. 1012, 71 Am. St. Rep. 615; Bailey v. Mosher, 63 Fed. 488, 11 C. C. A. 304; Kennedy v. Gibson, 8 Wall. 498, 19 L. Ed. 476; Platt, etc., v. Beach, 2 Ben. 203, Fed. Cas. No. 11,215; Gerner v. Thompson (C. C.) 74 Fed. 125; Stanton v. Wilkeson, 8 Ben. 357, Fed. Cas. No. 13,299; Bank of Bethel v. Pahquiogue Bank, 14 Wall. 383, 20 L. Ed. 840; Bank v. Peters (C. C.) 44 Fed. 13; Briggs v. Spaulding, 141 U. S. 132, 11 Sup. Ct. 924, 35 L. Ed. 662; Landis v. Sea Isle Co., above cited.

Complainants lay much stress upon the claim that there exists between creditors and the trustees the relation of trustee and cestui que trust, citing among other cases that of Hornor v. Henning et al., 93 U. S. 228, 23 L. Ed. 879. That suit was brought against the trustees of the Washington Savings Bank, organized under section 4 of the Act of Congress passed May 5, 1870, c. 80 (16 Stat. 102), which provides (bottom of page 105) that:

"If the indebtedness of any company organized under this act shall at any time exceed the amount of its capital stock the trustees of such company assenting thereto shall be personally and individually liable for such excess to the creditors of the company."

The only point before the court was that the liability created by a violation of this clause of the statute constituted a claim inuring to the benefit of all creditors, and that an action at law could not be maintained thereon by one creditor among many, but that the remedy was in equity. This case might be in point were the case at bar based upon a liability to the creditors alone, but it has no bearing upon the issues here presented. There are cases which on casual examination seem to hold that the directors occupy some sort of a trust relation toward general creditors, but the language is loosely used, and evidently not intended to lay down the principle contended for by complainants. It may be fairly gathered from these decisions that all they intend to hold is that the relationship is similar to that of trustee and cestui que trust. If, however, the relation between the creditors and the directors is that of a trustee and cestui que trust, the right of action would not vest in the receiver, but in the creditors. It is not a bank asset, nor is it a general asset. The receiver, standing in the shoes of the bank, could not assert such a claim. It would be personal to the creditors. If, then, this suit is brought to recover an asset of the bank—and I am of the opinion that it is so brought—and the liability sought to be enforced grows out of a trust relation between the parties hereto, complainants have mistaken their remedy. I do not deem it necessary to pass upon the other ground of demurrer presented, at this time.

The demurrer is sustained.