[No. 1773, November 16, 1915.]
FIRST NATIONAL BANK OF LAS VEGAS v. CLARK.    (ADLER et al., Interveners.)

SYLLABUS BY THE COURT.

In order to be entitled to intervene under section 4296, Code 1915, it is necessary that the interest of the intervener in the matter in litigation be direct and of a substantial nature, not indirect, inconsequential, or contingent.

Appeal from District Court, San Miguel County; D. J. Leahy, Judge.

Action by the First National Bank of Las Vegas, N. M., against John S. Clark, trustee of the estate of Aaron M. Adler, bankrupt, wherein Aaron M. Adler and others intervened. Judgment for plaintiff. Defendant and interveners appeal. Affirmed.

JOHN D. W. VEEDER and ELMER E. VEEDER of Las Vegas, for appellants.

Only necessary parties are mortgagee, mortgagor and those subsequently acquiring interest in property.
27 Cyc. 1562-3.

If action is based on contract, only proper sole defendant is promisor, in eyes of law, or his representatives. Test is the interest in subject-matter of contract.

First National Bank of Las Vegas v. Clark, 21 N. M. 151.

30 Cyc. 102-3; Dicey Parties, 30, 223, 229, 230, 225; Davis v. Trust Co., 152 U. S. 594; Tug River Coal & Salt Co. v. Brigel et al., 86 Fed. Rep. 818 (822); Fifth Ave. Bank of Brooklyn v. Cudlipp et al., 37 N. Y. Supp. 248.

Bankruptcy act of 1898 gives courts wider control over controversies not strictly part of proceedings in bankruptcy than did act of 1867.

Bardes v. Hawarden Bank, 178 U. S. 525 (538); Louisville Dry Goods Co. v. Lanman, 121 S. W. 1042; In Re Porter et al., 109 Fed. Rep. 111.

S. B. DAVIS of Las Vegas, for appellee.

After appointment and qualification of trustee in bankruptcy he is the real party in interest and suits must be brought in his name for recovery of property alleged to belong to bankrupt estate.

Sub-sec. 7, sec. 2, Bank. Act 1898; sub-sec. 2, sec. 47. *Id.*; sub-sec. *a*, sec. 70, *Id.*; Guaranty Title & Trust Co. v. Pearlman, 144 Fed. 550; Trimble v. Woodhead, 102 U. S. 647; Moore, Schafer Shoe Mfg. Co. v. Billings, 80 Pac. 422; Falco v. Kaupisch Cream. Co., 70 Pac. 286; Remington Bankruptcy (1908), secs. 1192-1206, and authorities cited.

## OPINION OF THE COURT.

HANNA, J.—This is a suit brought in the district court for the county of San Miguel by the First National Bank of Las Vegas, N. M., and against John S. Clark, trustee in bankruptcy of the estate of Aaron M. Adler. Plaintiff's first cause of action seeks to foreclose a mortgage deed, dated March 19, 1912, made, executed, and delivered to plaintiff by Aaron M. Adler and Clar Adler, his wife, to secure the payment of a promissory note of the same date in the sum of $6,000, with interest at the rate of 10 per cent. per annum from date until paid, made, executed, and delivered to plaintiff by said Aaron M. Adler. For plaintiff's second cause of action it is alleged

that on June 1, 1910, Simon Vorenburg made, executed, and delivered to Aaron M. Adler, his promissory note in the sum of $3,000, with interest at the rate of 10 per cent. per annum, payable 12 months after date; that on and before March 19, 1912, the said Adler was largely' indebted to plaintiff, and for the purpose of securing that indebtedness and the payment of the $6,000 note, dated March 19, 1912, the said Adler assigned and set over to the plaintiff the Vorenburg note; that subsequent to March 19, 1912, Aaron M. Adler became indebted to the San Miguel National Bank in the sum of $1,800, and to D. T. Hoskins, receiver of the Graaf Dry Goods Company, in the sum of $1,000, both debts being unsecured; that within four months of the date of the recording of the mortgages dated March 19, 1912, (the exact date thereof not appearing in the complaint), the San Miguel National Bank and the said Hoskins intended to commence involuntary bankruptcy proceedings against the said Adler for the purpose of practically attempting to set aside the said mortgage of March 19, 1912; that neither plaintiff nor said Adler desired that such proceedings be instituted; that on January 11, 1913, the San Miguel National Bank, Hoskins, certain administrators of the estate of Julius Graaf, deceased, and plaintiff entered into an agreement whereby the indebtedness owing the San Miguel National Bank and said Hoskins was ascertained and declared, and it was agreed that, in the event of the foreclosure of said mortgage by plaintiff, the proceeds thereof were to be distributed by the plaintiff among the various parties to the agreement in the proportion that the indebtedness owing to each by said Adler bore to the total amount derived from such foreclosure, excepting certain necessary expenses; that said agreement was for the benefit of said Adler, as well as the plaintiff, and was by said Adler ratified and confirmed; that it was further agreed between the said parties that all collateral held by plaintiffs, including the Vorenburg note, should be held by plaintiff as security for any loss or damage sustained by the plaintiff on account of the execution of said agreement.

The plaintiff prayed for an accounting as between it and the defendant Adler, to the end that the court ascertain the amounts of the indebtedness secured by the mortgage represented by the Vorenburg note, owing the San Miguel National Bank by Adler, owing Hoskins, the receiver, by Adler, and the amount of indebtedness owing by Adler to the plaintiff; that the plaintiff be decreed a lien on the real estate described in the mortgage to the extent of $6,-000, with accrued interest; that a sale thereof be had to satisfy said lien; that defendant trustee be barred and forever estopped from having or claiming any right or interest in the premises, except the right of redemption; that the plaintiff be decreed to have a lien on the Vorenburg note for any deficiency of the face and interest of the promissory note of March 19, 1912, and to have a lien on any sums which it may be obligated to pay to the San Miguel National Bank or Hoskins, receiver, on account of said agreement. An answer was filed by the defendant trustee, which was subsequently displaced by an amended answer.

Aaron M. Adler, Clara Adler, his wife, Minnie Cellers, Bertha Cellers, and Justin Cancil, filed their joint petition of intervention in said cause. A demurrer to that petition, filed by plaintiff, was sustained, and a joint amended petition was filed by said petitioners. It is alleged therein that Aaron M. Adler and Clara Adler, his wife, are the mortgagors named in said mortgage; that the other petitioners are creditors of the estate of Aaron M. Adler, bankrupt, and sue for themselves and others similarly situated; that, in addition to the execution of the mortgage mentioned in the complaint, Adler and his wife pledged to the plaintiff a large amount of collateral securities amounting to $3,000, "largely in excess of said indebtedness"; that the agreement of January 11, 1913, was made and entered into by the parties thereto to fraudulently conceal from the other creditors of said Adler the execution of the mortgage of March 19, 1912, and to prefer a few creditors over other creditors, as well as for the purpose of preventing the unsecured creditors from filing

their bill in equity within six months after the mortgage was filed of record, for the purpose of setting aside said mortgage; that said agreement was also executed for the purpose of preventing the other creditors from sharing in the distribution of the assets pledged to the complainant and to appropriate said assets to itself and the other preferred creditors. It is alleged that said mortgage is fraudulent and void; that Aaron M. Adler was not a party to said agreement, nor had he knowledge thereof until the complaint herein was filed; that the agreement of January 11, 1913, was never recorded or placed of record, and is in fraud of the national Bankruptcy Act and the statutes of New Mexico; that the benefits of said mortgage and agreement inure to all of the creditors of Adler; that, on information and belief, the claims mentioned in said agreement were purchased by plaintiff at less than their face value, by which means plaintiff seeks payment thereof from the assets of said estate in preference to other creditors and in fraud of their rights; that the Vorenburg note was pledged by Adler to plaintiff to secure an indebtedness; that said note is long past due; that said Adler has requested the plaintiff to bring suit on said note, but it refuses so to do, or to surrender the same to Adler for the purpose of bringing suit therefor; that plaintiff claims to be the owner of said note; that Adler is entitled to credit for the amount of said Vorenburg note on the indebtedness which he owes to plaintiff. Petitioners prayed for an accounting between them and plaintiff; that the said mortgage be held fraudulent, and to operate as an assignment of the property described therein to all the creditors; that the agreement of January 11, 1913, be held fraudulent, and the property and effects described therein be held to inure to all the creditors.

To this petition a demurrer was filed by plaintiff, which set up the following: (1) That the petition did not state facts sufficient to constitute grounds for intervention, the allegations therefor not being sufficient to make the mortgage fraudulent, for the reason that upon the face thereof it appears that the mortgage is valid and outstanding.

(2) That the petition is frivolous, being identical with the petition heretofore filed by the same parties. (3) That petitioners have no interest in the matters in litigation, or in the success of either of the parties to said cause. (4) That Adler and wife have no interest in the real estate involved in said cause; the said real estate being vested in the defendant trustee as alleged in the complaint. (5) That it appears upon the face of the petition that neither the mortgage nor agreement was fraudulent nor concealed from the creditors of said Adler, inasmuch as it appears that the mortgage was placed of record more than six months prior to the filing of the petition in bankruptcy. (6) That the petitioners are not necessary or proper parties to the suit between plaintiff and defendant.

The appellant asserts that the trial court erred in sustaining the demurrer to the petition of intervention, because, for one reason, the action between the plaintiff and defendant sounded in contract, and that the test, therefore, is not the existence of any interest in the matter in litigation, but an interest in the subject-matter of the contractual obligation. It is argued by appellant that no valid or effectual decree can be rendered between plaintiff and defendant, because the trustee in bankruptcy is entitled to only the equity in the mortgaged property and he receives that equity in lieu of the mortgagors, and distributes it, or its equivalent, to the creditors of the estate. The argument proceeds further upon the theory that the value of such equity depends upon the contractual obligations existing between plaintiff and the petitioning mortgagors, and that the latter are entitled to their day in court. It is admitted by the parties that the trial court had jurisdiction of the subject-matter of the controversy, the plaintiff not having surrendered its security and made proof of its claim before the referee in bankruptcy or before the United States District Court, and we therefore assume, without deciding, that the trial court had jurisdiction of the main case.

The first question to be considered is whether or not the appellants were entitled to intervene or be made par-

First National Bank of Las Vegas v. Clark, 21 N. M. 151.

ties defendant in the action pending between the appellee and John S. Clark, trustee. The appellants claim that they were entitled to join as defendants under the provisions of section 4296, Code 1915. That statute was enacted in 1880 and provides that:

"Any person who has an interest in the matter in litigation, in the success of either of the parties to the action, or against both, may become a party to an action between other persons, either by joining the plaintiff in claiming what is sought by the declaration, or by uniting with the defendants in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, either before or after issue has been joined in the cause and before the trial commences."

The appellee does not contend that the statute cited does not apply to this suit, but assumes that it does apply, and contends that the appellants have no such interest in the matter in litigation as the statute requires. Without deciding whether or not the statute has any application to this suit, we will assume, for the purposes of this case only, that it does apply, and test the right of appellants to intervene by the statute rather than by the principles of equitable jurisprudence. In Meyer & Sons Co. v. Black, 4 N. M. (Gild.) 368, 16 Pac. 620, which was the first New Mexico case construing the statute involved in the case at bar, it was held that the assignee of Black had no interest in the matter in litigation, which was a debt owing the plaintiff by defendant, although attachment was sued out by plantiff and levied on the property held by the assignee. In Miller v. City of Socorro, 9 N. M. 416, 54 Pac. 756, two taxpayers intervened in a suit pending in the district court on appeal from the city council. It was held that the taxpayers were the real parties in interest, and had an interest in the matter in litigation, which was the validity of city bonds. See, also, Field v. Sammis, 12 N. M. 36, 73 Pac. 617, where it was held that a person having an interest in certain money held by a garnishee was entitled to intervene in those proceedings.

These cases illustrate the views of the court under a given state of facts, but lay down no general test by which to determine the extent of interest one must have in the litigation in order to be entitled to intervene. In Pomeroy's Code Remedies, § 324, it is said that:

"The intervener's interest must be such that if the original action had never been commenced, and he had first brought it as the sole plaintiff, he would have been entitled to recover in his own name to the extent at least of a part of the relief sought, or, if the action had been first brought against him as defendant, he would have been able to defeat the recovery in part at least."

The extent of interest in the matter in litigation which must be had by one to come within the terms of the statute is better defined and illustrated by the cases involving statutes very similar to ours. In Horn v. Volcano Water Co., 13 Cal. 62, 69, 73 Am. Dec. 569, 570, which is the pioneer California case on the subject, the court said:

"The interest mentioned in the statute, which entitles a person to intervene in a suit between other parties, must be in the matter in litigation, and of such a direct and immediate character that the intervener will either gain or lose by the direct legal operation and effect of the judgment. The provisions of our statute are taken substantially from the Code of Procedure of Louisiana, which declares that, 'in order to be entitled to intervene, it is enough to have an interest in the success of either of the parties to the suit'; and the Supreme Court of that state, in passing upon the term 'interest,' thus used, held this language: "This, we suppose, must be a direct interest, by which the intervening party is to obtain immediate gain, or suffer loss, by the judgment which may be rendered between the original parties; otherwise, a strange anomaly would be introduced into our jurisprudence of suffering an accumulation of suits in all instances where doubts might be entertained, or enter into the imagination of subsequent plaintiffs, that a defendant against whom a previous action was under prosecution might not have property sufficient to discharge all his debts. For as the first judgment obtained might give a preference to the person who should obtain it, all subsequent suitors, down to the last, would have an indirect interest in defeating the action of the first.' Gasquet v. Johnson, 1 La. 431. To authorize an intervention, therefore, the interest must be that created by a claim to the demand, or some part thereof, in suit, or a claim to or lien upon the property, or some part thereof, which is the subject of litigation."

In Isaacs v. Jones, 121 Cal. 257, 53 Pac. 793, 1101, the plaintiff brought suit for dissolution of a partnership of which he was a member, and for an accounting, etc. The Bank of Yolo intervened, attaching certain property and alleging that it had acquired a lien on the property of the partnership thereby, and of the interest in certain realty of one of the parties. The court said:

"There have been many decisions upon the right of intervention which is given by this section, but in none of them has there been any attempt to define the right in any clearer terms than those of the section itself. Whether any particular case is within the terms of the premises is best determined by a consideration of the facts of that case. * * * To avail himself of the right given by this section, the applicant must have either an interest in the matter in litigation, or in the success of one of the parties to the action, or an interest against both of them. The interest here referred to must be direct, and not consequential, and it must be an interest which is proper to be determined in the action in which the intervention is sought. In one sense, it may be said that a creditor of the plaintiff in an action for damages may have an interest in his recovering judgment against the defendant, since thereby he may be able to recover his own debt, but such interest will not give him the right to intervene in the action."

The court then held that the object of the action was a distribution of the assets of the partnership, and a determination of the amount to which each partner may be entitled, and that the intervener had no interest therein within the meaning of the statute.

In Limberg v. Higginbotham, 11 Colo. 316, 318, 18 Pac. 33, 34, the court, after declaring that the matter in litigation was a sum due upon a lease contract, in whcih the intervener had no interest, said that:

"There was nothing alleged in the petition showing that the rights or remedies of the petitioner could in any way be affected by the judgment which might be entered between the parties plaintiffs and defendant in the case, or that the petitioner had such an interest in the matter in litigation that he would gain or lose by the direct legal operation and effect of such judgment."

In Wood v. Waterworks Co., 20 Colo. 253, 267, 38 Pac. 239, 244 (46 Am. St. Rep. 288), the court observed that:

"The interests of petitioners were such that they would inevitably lose by the direct legal operation and effect of the judgment, which plaintiff sought to obtain in the action."

The same test was applied in Henry v. Travelers' Ins. Co., 16 Colo. 179, 186, 26 Pac. 318; People v. Green, 1 Idaho, 235, 240; Pittock v. Buck, 15 Idaho, 47, 96 Pac. 212.

In Cache La Poudre Irrigation Ditch Co. v. Hawley, 43 Colo. 32, 38, 95 Pac. 317, 319, the court said:

"Under this provision it has been ruled by this court that a party is entitled to intervene in a suit between other parties when it appears that he has an interest in the subject-matter of litigation of such a direct and immediate character that he will either gain or lose by the direct legal operation and effect of the judgment, and that in determining the sufficiency of the petitioner to intervene the averments of the petition, so far as well pleaded, must be taken as true."

To the same effect is Harlan v. Eureka M. Co., etc., 10 Nev. 92.

In Bennett v. Withcomb, 25 Minn. 148, the object of the action was the reformation of certain written instruments. The intervener made claim of title and possession to the land embraced and described within the instruments sought to be reformed. The court held that he had no such interest in the matter in litigation as would empower him to intervene, and further remarked:

"Whatever judgment may be rendered between the original parties to the action, it is clear that he [the intervener] will not derive any immediate gain, or suffer any loss, by its direct legal operation and effect."

To the same effect is Faircy v. St. Paul I. & S. S. Co., 110 Minn. 311, 125 N. W. 676 (1910.)

In Yetzer v. Young, 3 S. D. 263, 52 N. W. 1054, the court held that, to entitle one to intervene under their statute, which was similar to ours, the interest must be that created by a claim to the demand, or some part thereof, or a claim to a lien upon the property, or some part thereof, which is the subject of the litigation, and, using that as a test, it held that a mere judgment creditor, having no lien by levy, execution, or attachment on property

which the plaintiff was seeking to expose to sale under foreclosure of a mortgage, had no such interest as would entitle him to intervene.

The author of the very valuable note to Walker v. Sanders, 123 Am. St. Rep. 276, says that:

"Any loss or gain by the direct legal effect and operation of a judgment, it is true, will generally, if not universally, justify the granting of an application for leave to intervene, but that this is essential in all cases to sustain an intervention, even though it is so declared by statute, is confidently denied. No one so loses or gains in the strict sense of the term unless he is a party or in privity with a party to the proceedings. * * * Privies may * * * intervene, because, as such, they are bound by, and may have the benefit of, the judgment; but they by no means constitute the only class of persons entitled to this remedy, and this may be affirmed, almost without taking into consideration the peculiar language of any statute, for, whether judges or legislators have employed the terms referred to, they did so carelessly and inadvertently, and have meant no more than that a person is entitled to intervene if the direct operation of the judgment, if enforceable against him, must be to benefit or prejudice him. * * * [Authorities.] On the other hand, though the enforcement of the judgment, when rendered, might benefit or prejudice the applicant for intervention, this does not entitle him to intervene if its effect is indirect, as where the party for or against whom the judgment may be, may, because of it, become more or less able to satisfy some obligation existing from him to the intervener. [Authorities.]"

We apprehend that the statute itself serves as the best guide to determine the right to intervene. It needs no interpretation, further than it is necessary to remark that it contemplates that the interest of one claiming its privilege must not be indirect, consequential, or contingent, but must be direct and of substantial nature. Each case, therefore, must be determined by a consideration of its particular facts, in order to ascertain whether the right of intervention is given or not.

In the case at bar we have three unsecured creditors asserting their right to intervene in the suit between the mortgagee and the trustee in bankruptcy. They claim no specific lien on the property which is involved in this suit, nor any right thereto, except the general right of creditors to their respective interests in the proceeds of the sale of

said property as it comes to the trustee. One of the other interveners is the bankrupt, and the other is his wife, who joined in the mortgage to plaintiff. Subsection "a," § 70, of the Bankruptcy Act of July 1, 1898 (30 Stat. pp. 544, 565, c. 541 [U. S. Comp. St. 1913, § 9654]), provides that the trustee of the estate of a bankrupt, upon his appointment and qualification, shall be vested by operation of law with the title of the property of the bankrupt as of the date he was adjudged such, except as to certain designated property. Under the laws of this state, a mortgage of real property does not pass the legal title to the premises described therein to the mortgagee, except where a stipulation is inserted therein to the contrary; the legal title to such premises remaining in the mortgagor, the mortgagee simply taking a lien or security for the payment of a debt. Stearns-Rogers Mfg. Co. v. Aztec Gold M. & M. Co., 14 N. M. 300, 93 Pac. 706; Cleveland et al. v. Bateman, 152 Pac. —, not yet officially reported.

At the time the trustee in bankruptcy was appointed and qualified, the legal title to the premises involved in this litigation and described in the mortgage was vested in the bankrupt. Under the provisions of sub-section "a" of section 70 of the Bankruptcy Act of 1898, the legal title to said premises thereupon became vested in the trustee by operation of law, chargeable with the first lien of the plaintiff herein. In re Novak (D. C.) 111 Fed. 161; In re Kellogg (D. C.) 113 Fed. 120. Likewise the equitable title of the bankrupt in the Vorenburg note became vested in the trustee by operation of the law. The act heretofore referred to divested the mortgagor, Adler, of all title in the premises, and of his equity in the note, and vested them in the trustee for the purpose of collecting and reducing them to money for the benefit of the creditors of the bankrupt estate. Sub-section 2 of section 47 of the Bankruptcy Act of 1898. By sub-section "e" of section 70 of said Act, it is provided that:

"The trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided. * * *"

The interveners are seeking to set aside the mortgage which plaintiff is attempting to foreclose, on the ground that it was made six months before the adjudication in bankruptcy, for the purpose of defrauding the creditors of the bankrupt. They are also seeking to set aside the agreement of January 11, 1913, on the ground that it is fraudulent. The agreement last referred to sought to permit certain creditors of the bankrupt to participate in the proceeds of the sale of the mortgaged premises and to secure the mortgagee from any loss or damage which might be suffered by it on account of the execution of that agreement; it being provided that should it suffer any loss or damage that then the proceeds of the Vorenburg note should be applied to that loss.

In Guaranty Title & Trust Co. v. Pearlman (D. C.), 144 Fed. 550, it was held that the right to set aside a mortgage is dependent upon the federal statute, and that the statute vested such right exclusively in the trustee. See, also, Trimble v. Woodhead, 102 U. S. 647, 26 L. Ed. 290. In Moore Mfg. Co. v. Billings, 46 Or. 401, 80 Pac. 422, it was held that only the trustee can exercise the right, to the exclusion of creditors.

In Glenny v. Langdon, 98 U. S. 20, 25 L. Ed. 43, certain debtors made an assignment for the benefit of creditors. The assignee made final distribution of the proceeds of the visible property of the estate. Subsequently one of the debtors filed a petition in bankruptcy, and later another of the debtors, a member of the firm in which the first debtor was a partner, filed his petition in bankruptcy. The firm and each of the partners were adjudged bankrupts, but they surrendered no property. Subsequently it was discovered that the bankrupts had concealed property from the state assignee and the assignee in bankruptcy. Thereupon a creditor of the bankrupts brought suit in his own name to recover the concealed property. The court held, referring to the Bankruptcy Law of 1867 (Act March 2, 1876, c. 176, 14 Stat. 517), which so far as this question is concerned is not materially different in legal effect from the act of 1898, that the assignee became

seised of the property of the bankrupt, and that plaintiff had no remedy except through him; he being the person designated by statute to sue in such events, and this because the remedies of creditors are absorbed in the great and comprehensive remedy contemplated by the act. In other words, the right which creditors would ordinarily have in the premises passes to the trustee, and that is so under the act of 1898, and a creditor cannot assert those rights in his own name. See, also, Moyer v. Dewey, 103 U. S. 301, 26 L. Ed. 394; Falco v. Kaupisch Creamery Co., 42 Or. 422, 70 Pac. 286, where the court said that the trustee was not only an officer of the court, but the representative of the creditors of the estate, and that it is only through the instrumentality of the trustee that certain assets of the estate can be reached by the creditor and subjected to the payment of his debt.

It is clear that by virtue of the laws of the United States the trustee represents the creditors in suits concerning the estate, and to that end is the real party in interest. In the elaborate note to Walker v. Sanders, 123 Am. St. Rep. 276, cited supra, the author says on page 305:

"The case of a creditor who has no lien for the security of his debt and has not reduced it to judgment forms the most frequent illustration of a third person who may gain or lose by a judgment between others, and yet whose gain or loss is of so indirect a character that it cannot entitle him to intervention."

A number of cases are cited by the author, to some of which we have referred herein.

The law of the United States having effectively dispossessed the bankrupt himself of all title to the property in litigation in this suit, we cannot see how he comes within the terms of the intervention statute. As was said in Re Novak (D. C.) 111 Fed. 161, 162, "the trustee is the successor to the rights of the bankrupt in said property," and therefore the bankrupt has no interest whatever in the matter in litigation. The bankrupt is in almost the same position as a grantor who conveys all his right, title,

and interest in certain premises to his grantee. The same is true as to the Vorenburg note. If the bankrupt had an equity therein at the time of the bankruptcy proceedings the trustee succeeded to such interest.

No fraud or collusion having been alleged in the petition of intervention to exist between the plaintiff and the trustee, the creditors being general and unsecured creditors, without specific liens on any of the property which is the subject of this litigation, the law of the United States making the trustee in bankruptcy the real party in interest, the creditors having but a contingent and indirect interest in the matter in litigation, and all rights of the bankrupt having passed to the trustee, we are of the opinion that the bankrupt and the three intervening creditors have no such interest in the matter in litigation as entitled them to intervene herein.

As to Clara Adler, wife of the bankrupt, the facts are somewhat different. She is not a bankrupt, so far as the record shows, nor is she represented in any respect by the trustee in bankruptcy. As a matter of fact she is, we assume, a tenant in common of the trustee in the real estate described in the mortgage securing the $6,000 note. It does not appear that she has any further interest in the matter in litigation. She asserts in her petition jointly with the other petitioners that she was one of the mortgagors, and that the mortgage was made to secure a past indebtedness, and in contemplation of insolvency. The only part of the prayer in the petition affecting her is that the mortgage be declared null and void, and that it operate as an assignment of the property in favor of the creditors of the bankrupt, and that the agreement of January 11, 1913, be declared null and void, and the effects described therein inure to the benefit of the creditors. From what appears, it might be assumed that she had no real interest in the lands described in the mortgage, and that such property belonged solely to her husband, and she joined in the mortgage as a nominal party only. Throughout appellant's brief counsel proceed upon the erroneous assumption that a mortgage of real estate passes

the legal title of the premises described therein to the mortgagee, and that the mortgagor retains only the equity of redemption. They also treat the positions of the bankrupt and Clara Adler as identical. Because of this latter fact no argument is made, as it specially affects Clara Adler, and therefore we are not justified in deciding propositions of law affecting her, which are not assigned or argued.

In passing, we might add that a decree of foreclosure obtained in the pending suit against the trustee cannot affect the interest, if any, owned by Clara Adler in the premises; she not being joined as a party defendant.

As the questions decided herein are decisive of this case, the judgment of the trial court will be affirmed; and it is so ordered.

ROBERTS, C. J., and PARKER, J., concur.